103 N.J. Super. 238 (1968)
247 A.2d 39
ANGELA DeANGELIS, ET AL., PLAINTIFFS, AND ESSEX COUNCIL NUMBER 1, NEW JERSEY CIVIL SERVICE ASSOCIATION, INC., INTERVENING PLAINTIFF,
v.
HUGH J. ADDONIZIO, MAYOR OF THE CITY OF NEWARK; THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; THE NEW JERSEY COLLEGE OF MEDICINE AND DENTISTRY, A BODY CORPORATE AND POLITIC IN THE DEPARTMENT OF HIGHER EDUCATION OF THE STATE OF NEW JERSEY; C. RICHARD WEINBERG, DIRECTOR OF NEWARK CITY HOSPITAL; ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY; CIVIL SERVICE COMMISSION OF THE STATE OF NEW JERSEY; DR. CARL L. MARBURGER, COMMISSIONER OF EDUCATION OF THE STATE OF NEW JERSEY; AND ROBERT R. CADMUS, M.D., PRESIDENT, NEW JERSEY COLLEGE OF MEDICINE AND DENTISTRY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 7, 1968.
*241 Mr. Solomon Golat, for plaintiffs (Messrs. Talisman & Golat, attorneys).
Mr. Jacob Fox, for intervening plaintiff Essex Council Number 1, New Jersey Civil Service Association, Inc. (Messrs. Fox, Yanoff and Fox, attorneys).
Mr. Brian Harris, Assistant Corporation Counsel of the City of Newark, for defendants Mayor Addonizio; the Newark Municipal Council, and Director Weinberg (Mr. Philip R. Gordon, Corporation Counsel of Newark, attorney).
Mr. Clyde Szuch for defendants The New Jersey College of Medicine and Dentistry, and Dr. Cadmus (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Theodore A. Winard, Deputy Attorney General of the State of New Jersey, for defendants Attorney General Sills, the Civil Service Commission and Commissioner of Education Marburger (Mr. Arthur J. Sills, Attorney General of the State of New Jersey, attorney).
LARNER, J.S.C.
This action is brought by a group of employees of the former Newark City Hospital (hospital) on behalf of themselves and others in the same class seeking a declaratory judgment relating to their status as employees of the New Jersey College of Medicine and Dentistry *242 (college), which now owns and operates the hospital. By order of the court, Essex Council Number 1, New Jersey Civil Service Association, Inc. was permitted to intervene as a party plaintiff, asserting the same position as co-plaintiffs on behalf of approximately 200 members of the Association who are also employees at the hospital.
The matter came before the court initially on plaintiffs' application for preliminary restraints pending final hearing, which application was denied. Because of the public importance of the issues involved in the litigation and the obvious need for early disposition, the court suggested that the parties stipulate that the pleadings, affidavits, briefs and arguments submitted on the motion for preliminary restraints be considered by the court as if both sides had filed counter-motions for summary judgment. Since the material facts are not in dispute, counsel for the respective parties stipulated to that effect and subsequently perfected the record by filing formal motions for summary judgment.
The litigation stems from the take-over of the hospital complex by the college on July 1, 1968 pursuant to an agreement between the City of Newark and the college, whereby the city conveyed and transferred to the college without monetary consideration all the land, buildings, equipment, furnishings and supplies representing the tangible assets of the hospital owned and operated by the city for many years. Under this agreement the college accepted "complete and sole responsibility" for the operation and management of the hospital. Although the city conveyed and transferred absolute title to the college, the latter agreed to reconvey the hospital assets to the city in the event that it ceased to operate as a college in the State of New Jersey.
In addition to provisions involving the care of the indigent, the continuation of the school of nursing, and the maintenance of the ambulance service, the city incorporated in the agreement various provisions relating to the existing municipal employees assigned to the hospital prior to the take-over. Some of these provisions dealt with the preservation *243 of employees' pension and retirement benefits; others dealt with the continued maintenance of hospitalization and medical coverage; still others obligated the hospital to grant certain minimum benefits to employees regarding salaries, vacations, sick pay, promotions, etc.
It is apparent from the agreement and the preceding negotiations that there existed a sharp dispute between the city and the college as to the applicability of the civil service laws and regulations to the hospital employees after the commencement of the college's ownership and administration. In any event, this was not resolved by the agreement, which in fact contained provisions which would become applicable if civil service laws were held to control and alternate provisions which would become applicable if civil service laws were held not to control.
Nevertheless, regardless of the applicability of all the civil service laws to these employees, the college agreed to comply with those provisions of the Civil Service Act which prohibit removal, suspension, demotion or loss of position of employees without cause.
Plaintiffs contend that all "permanent" employees on the city payroll at the time of the change in administration, numbering approximately 750, are entitled to full civil service status as state employees, with the full panoply of rights and benefits guaranteed by the Civil Service Act and regulations of the Civil Service Commission. Although no declaratory relief is sought for approximately 500 "temporary" employees or for employees who may be hired in the future, it is manifest that the court's ruling as to the civil service status of current permanent employees will affect these other classes as well.
In seeking a declaration that the permanent employees are entitled to the full benefits and rights guaranteed by civil service status, plaintiffs seek protection which goes beyond the basic guarantees undertaken by the college in the agreement.
*244 Examples of the many additional controls and guarantees which would be required if the civil service laws are found applicable are the following: a classification plan approved and supervised by Civil Service Commission representatives, N.J.S.A. 11:5-1, 11:7-1; Civil Service approval for the creation of new positions, promotions, transfers, demotions, etc., N.J.S.A. 11:7-5; determination by the Commission as to designation of positions in classified and unclassified service, N.J.S.A. 11:7-11, 13; establishment of a compensation plan by the Commission and payment in accordance with such plan, N.J.S.A. 11:8-2, 3; use of competitive tests for employment eligibility tests, N.J.S.A. 11:9-1, 2; filling of vacancies from eligibility lists, N.J.S.A. 11:10-1 to 6; regulations as to promotion following competitive tests, N.J.S.A. 11:10-7; provisions for emergency appointments, N.J.S.A. 11:11-2; regulations as to probationary period of employment, N.J.S.A. 11:12-1, 2; establishment of service standards and ratings by the Commission, N.J.S.A. 11:13-1; regulation by the Commission of hours of work, vacations and sick leave, N.J.S.A. 11:14-1 to 4; establishment of machinery for appeal to the Commission in connection with suspension, demotion and removal, N.J.S.A. 11:15-1 to 6; reinstatement of employees separated for economy reasons, N.J.S.A. 11:15-10.
The college asserts that it should not be hamstrung in its effort to rehabilitate the hospital and bring its service up to the best professional standards by the imposition of the many limitations and controls imposed by civil service laws and regulations, and it contends that its own policies afford adequate protection and security to employees without the implementation of civil service requirements. It seeks to be free to make radical changes in the quality and quantity of the staff in order to achieve its goal of developing a first-rate hospital.
Plaintiffs are fully in accord with the laudable objective of an improved hospital and service, but assert that this *245 objective can be obtained just as readily within the framework of civil service laws and regulations.
It is manifest, of course, that in the context of this litigation this court cannot concern itself with the question of whether the imposition of civil service laws upon the relationship between the college and its employees would aid or impair the efficient administration and improvement of the hospital. Nor is it appropriate for this court to consider the social consequences and community reactions asserted by both sides of this controversy in the event of a ruling for or against the applicability of civil service laws.
Rather, the issues of this litigation are controlled by the intent of the Legislature, as gleaned from the pertinent legislation and aids to construction which may be found in applicable judicial precedents. The rights of the employees are dictated by the applicable law rather than the agreement between the city and the college, and if they are entitled to civil service status under that law, any agreement to the contrary between the contracting parties inter se would have no legal impact.

I
The agreement between the city and the college came about after lengthy negotiations and pursuant to the authorization of an enabling act adopted by the Legislature on June 21, 1968, L. 1968, c. 103; N.J.S. 18A:64C-21 to 25. The act authorizes the governing body of a municipality where a site has been selected for the New Jersey College of Medicine and Dentistry to enter into an agreement for the sale of its public hospital to the college without compliance with the laws relating to sale of public property. The act affirmatively provides for the preservation of the retirement and pension rights of the former municipal employees of the hospital who continue as college employees and makes appropriate provision for payments by the college to the municipality and to the retirement system in implementation *246 of the maintenance of these benefits for the former municipal employees.
The section of the enabling act which is particularly pertinent to the issue at bar is N.J.S. 18A:64C-25:
"Upon the effective date of the acquisition of the hospital by the college, all permanent municipal employees of the hospital in the classified Civil Service, except physicians and dentists, shall continue as employees of the college and in accordance with the provisions of Title 11 of the Revised Statutes, Civil Service, shall not suffer loss of position or be removed, suspended or demoted except for cause."
Plaintiffs urge that this enabling statute, which was specifically adopted to authorize the sale and transfer of the hospital from the city to the college, reflects an intent on the part of the Legislature to preserve all the rights, benefits and procedures applicable to "permanent" municipal employees by virtue of full civil service status.
It is manifest that the Legislature intended that "all permanent municipal employees of the hospital" shall continue as employees of the college. This mandate was incorporated in the agreement and has been carried out by the college since its acquisition on July 1, 1968.
It is also clear that the Legislature determined that former permanent employees cannot suffer loss of position or be removed, suspended or demoted unless for cause. This obligation was also undertaken by the college in the agreement with the city using the language of the statute.
The college does not deny that these guarantees must be applied in its relations with former permanent municipal employees, and in fact has evinced an intent to do so. It maintains, however, that the legislative prohibition concerns only the "for cause" limitation on the power to discharge, suspend or demote "permanent" employees, and that the Legislature did not intend in the enabling act to afford the full complement of civil service procedures, controls and guarantees to these employees.
*247 An analysis of the statutory language reflects a legislative intent to protect "permanent" employees from loss of position, removal, suspension or demotion because of the take-over by the college. The Legislature directed that the college must comply with basic principles of civil service law and refrain from discharging, suspending or demoting "permanent" employees unless such action is for cause. In this manner, the positions of the former permanent employees are protected from the exercise of arbitrary or capricious action by the college and its administrators.
The structure of the language and punctuation reveals that the clause "and in accordance with the provisions of Title 11 of the Revised Statutes, Civil Service" modifies the subsequent clause dealing with loss of position, removal, suspension and demotion rather than the preceding clause, "shall continue as employees of the college." From this it would appear that the Legislature did not intend to apply the total effect of all provisions of Title 11 to the employees of the college, but only to apply the principles of Title 11 so far as they concern the prohibition against loss of position, removal, suspension and demotion except for cause.
If the Legislature intended the broad application of full civil service status to "permanent" employees, it could have expressed its intent in simple, direct language, such as "shall continue as employees of the college subject to civil service laws as theretofore," or "The college and all permanent municipal employees of the hospital shall continue to be subject to Title 11, Civil Service." (See N.J.S.A. 34:5-174, 30:9-25.1, and 40:54A-3 for instances of express statutory language making civil service laws applicable to employees of certain institutions and agencies.) The particular designation of the area in which the provisions of Title 11 have any effect upon the status of employees of the college negates plaintiffs' assertion of a legislative intent to incorporate in the statute the broad scope of civil service laws and status. The particular designation also negates any inference *248 of civil service applicability from the failure to insert specific exclusionary language.
The reference to Title 11 is no more than the imposition of safeguards in connection with personnel action which might be taken as to "permanent" employees in the areas of removal, suspension, demotion or loss of position in order to insure their continuance in their positions unless good cause is shown.
Further evidence of the intent of the Legislature to exclude applicability of full civil service status to employees of the college may be found in N.J.S. 18A:64C-8(j). (See parallel provision applicable to Rutgers University, N.J.S. 18A:65-25(i)). In outlining the powers of the board of trustees of the college, the Legislature authorized the board to "appoint, remove, promote and transfer * * * officers, agents, or employees as may be required to carry out the provisions of this chapter and assign their duties, determine their salaries, and prescribe qualifications for all positions and in accordance with the salary schedules of the state civil service commission wherever possible."
By this section the board is granted untrammeled power to appoint, remove and transfer the employees and to prescribe qualifications for all positions. Of course, this broad power is delimited by the special provisions contained in the act enabling the college to acquire the hospital, N.J.S. 18A: 64C-21 to 25, which has already been discussed. However, the subject matter of this grant of power in the basic statute establishing the college is clearly inconsistent with the broad application of civil service laws and their administration by the Civil Service Commission.
It is manifest that the Legislature did not intend to subject the college or the employees to the provisions of all civil service laws, except to issue a caveat that salary schedules of the state civil service commission shall be applied "wherever possible." The applicability of this latter provision to a specific position or salary is not before the court, nor is its significance from the viewpoint of enforceability. *249 Reference to it is made, however, to demonstrate that the legislative intent throughout the applicable statutes is to place employees of the college in a special category, beyond the normal sweep of civil service laws, and protected in narrowly defined areas by civil service standards.
Since the hospital was to be operated by the college and its administrators and not by the city through its elected officials, the Legislature apparently concluded that it was not necessary to apply all the provisions of civil service laws. The absence of a political hierarchy in the new management of the hospital eliminated the need for strict application of all civil service laws which were conceived originally to overcome the "spoils" system in our governmental entities.

II
It is manifest that the hospital employees are no longer in the service of the city and are therefore not governed by the municipal civil service laws adopted by that municipality, N.J.S.A. 11:19-1 to 11:26-1; although, in the event of separation from service, they would be entitled to reemployment rights vis-a-vis the city under N.J.S.A. 11:22-10.1, 10.2.
Plaintiffs therefore contend that regardless of the provisions of the enabling act, the employees at the hospital since the take-over by the college are in the service of the State and are therefore entitled to the protection of the state civil service laws by virtue of Art. VII, sec. I. par. 2 of the New Jersey Constitution, as implemented by N.J.S.A. 11:4-1 et seq. The Constitution provides:
"Appointments and promotions in the civil service of the State, and of such political subdivision as may be provided by law, shall be made according to merit and fitness to be ascertained, as far as practicable, by examination, which, as far as practicable, shall be competitive; except that preference in appointments by reason of active service in any branch of the military or naval forces of the United States in time of war may be provided by law."
If employees of the college are held to be in the service of the State, this constitutional provision would require the *250 guarantee to them of civil service status regardless of statutory enactments which might call for a contrary construction. Therefore, the determinative factor on this point is whether the hospital employees of the college are truly in the "civil service of the State" within the meaning of the New Jersey Constitution.
It is urged by the plaintiffs that the college is but an agency of the State of New Jersey, exercising "public and essential governmental functions" established under N.J.S. 18A:64C-2 in the State Department of Higher Education. Although the statutory scheme creates the college as a corporate entity with corporate succession, it is urged that such corporate organization is only for convenience of administration and that, as a matter of substance, the college is a mere branch or agency of the State for the particular purpose of operating and administering a college of medicine and dentistry. In support of this position, plaintiffs cite as analagous precedents the cases of Trustees of Free Public Library v. Civil Service Commission, 83 N.J.L. 196 (Sup. Ct. 1912), affirmed 86 N.J.L. 307 (E. & A. 1914), and Glick v. Trustees of Free Public Library, 1 N.J. Super. 308 (App. Div. 1949) affirmed 2 N.J. 579 (1949).
The former case, Trustees, dealt with the application of civil service laws to the employees of the library of the City of Newark. Our former Supreme Court held that the employees were entitled to civil service status on the ground that the library, though a separate corporate entity under N.J.S.A. 40:54-11, was merely a branch or agency of the municipality and therefore subject to civil service laws and regulations, as any municipal department or agency would be. The Court of Errors and Appeals affirmed the holding but rested the affirmance on the narrow ground that the employees of the library were in the "paid service" of the municipality, 86 N.J.L., at p. 309.
In Glick the present Supreme Court concluded that the library of the City of Newark was an adjunct of the municipality despite its corporate form, and that as a matter *251 of policy and legislative intent it was subject to the bidding laws controlling municipalities.
Similarly, in State, Dept. of Civil Service v. Clark, 15 N.J. 334 (1954), the court found that the Civil Service Act, adopted by referendum in Hudson County, applied to the Boulevard Commission of Hudson County and its employees, regardless of the fact that the Boulevard Commission was created as a separate entity (N.J.S.A. 27:17-2, et seq.), because its funds are derived from the county board of freeholders. See Nolan v. Fitzpatrick, 9 N.J. 477 (1952). The court also relied upon the contemporary construction over many years during which the civil service status of the Commission employees was recognized both by the Boulevard Commission and the Civil Service Commission.
A contrary conclusion has been reached with respect to other governmental entities, such as the New Jersey Turnpike Authority, N.J.S.A. 27:23-5(m), and the New Jersey Highway Authority, N.J.S.A. 27:12B-5(q), where the Legislature expressly excluded the application of the civil service laws; and the local parking authorities, N.J.S.A. 40:11A-1 et seq., and the local housing authorities, N.J.S.A. 55:14A-1, et seq. (prior to an amendment in 1943, N.J.S.A. 55:14A-6.1 et seq.), where the courts have concluded that civil service laws are not applicable as a matter of legislative intent although the subject matter is not mentioned in the legislation. State v. Parking Authority of Trenton, 27 N.J. Super. 284 (Law Div. 1953), affirmed 29 N.J. Super. 335 (App. Div. 1954).
The foregoing cases dealing with authorities and other governmental corporate entities illustrate that the mere fact that the corporate body exercises public and governmental functions does not in itself dictate that its employees are in the service of the State. The crux of this problem is whether the function and life of the particular agency is dependent upon the State in its management and control, and whether it depends solely and entirely upon the *252 financial sustenance it receives from the State through its tax revenues. State v. Clark, supra, at p. 339.
The college was established in the State Department of Higher Education as a body corporate with corporate succession, controlled and managed by a board of trustees appointed by the Governor with the advice and consent of the Senate. N.J.S. 18A:64C-2 to 4. The board of trustees has general supervision over the conduct of the college, including the following powers, among others: to adopt a corporate seal; sue and be sued; determine the policies for organization, administration and development of the college; disburse all moneys received from various sources; appoint officers and employees and fix their compensation; fix and determine with the approval of the State Treasurer the tuition rates and other fees; grant diplomas; enter into contracts with the State, any other public body, private individual or corporation; accept grants from public or private agencies; acquire, sell or lease real and personal property; exercise the right of eminent domain, and adopt such bylaws, rules and regulations as are necessary for the operation of the college. N.J.S. 18A:64C-8.
It is significant also that the college has all powers incident to the proper government, conduct and management of the school "without recourse or reference to any department or agency of the state," except as may be specifically provided in the legislation. N.J.S. 18A:64C-9. The college is deemed to be an employer for the purposes of the act integrating public employees into the social security system (N.J.S.A. 43:15A-1, 71), N.J.S. 18A:64C-11; and the legislation further provides that nothing contained therein involving the college or its activities shall be deemed to create or constitute a debt, liability or pledge of credit of the State of New Jersey, N.J.S. 18A:64C-17.
The State has the responsibility to provide the financial support necessary to the continuation of the college program, N.J.S. 18A:64C-1, and does so through annual appropriations made upon budget requests of the college board of *253 trustees. This financing is supplemented by tuition and fees and by grants and gifts from private and other public sources. With particular reference to the hospital facility operated by the college, a large portion of the financing is derived from patients' fees, including $7,400,000 annually from the City of Newark for care of the indigent.
An analysis of the foregoing powers, duties and method of operation of the college and the hospital points to the conclusion that the college is a truly independent entity whose autonomy is substantive rather than merely formal or organizational. The board of trustees has full control of the policies and functioning of the college, subject to minor supervisory functions of some state agencies. Not only does the institution have complete power to control its own destiny without recourse to any department or agency of the State, and not only is it designated as an employer for social security purposes, but it is granted power to enter into contracts with the State. If the college was but an agency or arm of the State as asserted by the plaintiffs, such power to contract with the State would have been wholly unnecessary and inappropriate.
From the viewpoint of financial support, it is evident that although the college depends in part on annual appropriations from the State, a substantial portion of its financial maintenance is derived from other sources. And what is more significant to the issue at hand is that the major source of revenue for the maintenance of the hospital is derived from non-state sources. It follows, therefore, that the existence and functioning of the hospital does not depend entirely upon financial support from the State and its tax revenues, and that the employees of the hospital are not paid exclusively from state tax revenues.
The court therefore finds that the employees of the hospital are in the service of the college, as an independent employer, and not in the service of the State. As a consequence, they are not entitled to the guarantee of civil service status *254 contained in the New Jersey Constitution or its implementing statutes.

III
As an additional basis for their contention that they are entitled to full civil service status, plaintiffs advance N.J.S.A. 30:9-23.12, which provides:
"No contract, agreement or lease authorized by this act shall deprive any employee of the county or municipality of any civil service status or rights, tenure or pension rights."
This section is part of a statute adopted in 1955 (L. 1955, c. 22; N.J.S.A. 30:9-23.6 to 23.14), which authorized the governing body of any municipality having a public hospital under its control to contract "for the affiliation of such hospital with any corporation licensed in this State to conduct a college of medicine or a college of medicine and dentistry." N.J.S.A. 30:9-23.6.
The several sections of this act reflect a legislative authorization for an affiliation agreement between a college of medicine and a municipality, including the sale, lease or permission to use equipment and facilities reasonably required for the performance of teaching and research functions of the college. N.J.S.A. 30:9-23.10 limits the duration of such agreement to a term not to exceed 50 years.
It is clear that this act was intended to enable a municipality to enter into an agreement of affiliation with a medical school, whereby the latter would be able to undertake the management and operation of a city hospital and also utilize its facilities for school purposes under a financial arrangement providing for the sharing of costs and expenses. It is just as clear that this act does not and was never intended to authorize a total sale and transfer of a hospital in the manner accomplished by the transaction between the city and the college in this case.
In fact, the parties to the agreement impliedly recognized that N.J.S.A. 30:9-23.6 to 23.14 did not authorize the *255 contemplated sale and transfer, for, in anticipation of the necessary enabling legislation of 1968 (L. 1968, c. 103) the Newark municipal council in its ratifying resolution of May 21, 1968 stated that the agreement is to become effective upon the adoption of an appropriate ordinance and "the enactment of enabling statutory legislation authorizing the City of Newark to convey the premises * * *."
There is no doubt that the transaction between the city and the college was given legal validity by the 1968 enabling act and not by the affiliation act of 1955. The latter statute has no applicability to the sale involved herein, and its proviso preserving the civil service status of employees is limited in its effect to the employer-employee relationship resulting from an affiliation agreement under that 1955 act. It has no applicability to an outright sale under the aegis of the 1968 statute.

IV
In a further effort to sustain their position, plaintiffs point also to N.J.S.A. 11:28-1, 11:28-2 and 11:28-3. These statutes protect the status of employees upon transfers of a department and functions from one service to another in a state, municipality, county or school district, or from one political subdivision of the State to another. However, none of these provisions applies to a transfer of functions from a municipality to the State or to a corporate entity created by the State to exercise public and governmental functions. The transfer of functions incorporated in the foregoing statutes do not encompass the transfer of the hospital from the city to the college, and thus the protective measures for civil service employees contained therein are not applicable.
The final statutory basis for relief asserted by plaintiffs is L. 1966, c. 302 § 36 (formerly N.J.S. 18:21A-36, saved from repeal by N.J.S. 18A:3-5). This statute provides as follows:
*256 "Nothing in this act shall be construed to deprive any person of any tenure rights or of any right or protection provided him by Title 11, Civil Service, of the Revised Statutes, or under any pension law or retirement system."
This section is part of the statute adopted in 1966 which created the Department of Higher Education in the Executive Branch of the State Government. It was adopted solely for the purpose of protecting the civil service status of employees who were transferred to the Department of Higher Education at the time of its creation under L. 1966, c. 302, § 35 (formerly N.J.S. 18:21A-35). It was merely intended to continue the same status for employees who had been in other departments of State Government, the functions of which were assumed by the Department of Higher Education or the Board of Higher Education created thereunder. The statute was never intended to apply to employees of municipalities whose positions might be affected by the sale or transfer of a hospital from the municipality to the College of Medicine. Since the employees of the hospital, as already noted, are employees of the college and not of the State or the State Department of Higher Education, the foregoing statute is wholly inapplicable, and the mere fact that the college was established as a corporate entity in the Department of Higher Education does not alter this conclusion.
For the foregoing reasons, the court concludes that the employees of the college performing services at the hospital are not entitled to full civil service status.