137 N.J. Super. 220 (1975)
348 A.2d 798
JOSEPH WHITE, CHRIS N. RICCARDI AND JOHN MILKIEWICZ, PLAINTIFFS-APPELLANTS,
v.
THE CITY OF PATERSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; THE CIVIL SERVICE COMMISSION OF THE STATE OF NEW JERSEY, AND HAROLD J. KANE, CHIEF OF THE PATERSON FIRE DEPARTMENT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1975.
Decided November 12, 1975.
*222 Before Judges LYNCH, ACKERMAN and LARNER.
Mr. Milton Prigoff argued for appellants (Messrs. Lebson & Prigoff, attorneys).
Mr. Henry Ramer, First Assistant Corporation Counsel, argued for respondents City of Paterson and Harold J. Kane (Mr. Joseph A. LaCava, Corporation Counsel, attorney).
Mr. John F. Shoosmith, Jr., Deputy Attorney General, argued for respondent Civil Service Commission (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
PER CURIAM.
By this action in lieu of prerogative writs plaintiffs challenge the right of defendant City of Paterson (city) to hire and assign to active duty in its Fire Department persons who have not qualified under the Civil Service Act but who were hired under Title II of the federal Comprehensive Employment and Training Act of 1973 (CETA), 29 U.S.C.A. § 801 et seq.[1] Plaintiffs also challenge a directive of the New Jersey Civil Service Commission (Commission) which authorizes such hiring by the city.
The trial judge dismissed the complaint on the ground that plaintiffs had not exhausted their administrative remedies under the Civil Service Act. Plaintiffs appeal.
The issue presented here is strictly one of law and, pursuant to N.J.S.A. 11:25-4, is cognizable by the Superior *223 Court in a proceeding in lieu of prerogative writs. Swede v. Clifton, 22 N.J. 303 (1956). Therefore, the trial judge was in error when he dismissed the complaint for failure to exhaust administrative remedies. We consider the matter on the merits. R. 2:10-5.
CETA creates a number of manpower training projects in the public employment area. The object of the act is to aid the chronically unemployed during the current economic crisis by supplying them with jobs, and at the same time training them in useful skills which can lead to permanent employment in the public or private sectors. 29 U.S.C.A. § 841. Title II of CETA provides federal funding for employment and training programs sponsored by localities with high unemployment rates.
During the year from June 1, 1974 to June 30, 1975 Paterson had an unemployment rate of 12%, and qualified as a "prime sponsor" within the meaning of CETA. 29 U.S.C.A. § 812. On October 5, 1974 five men hired with CETA funds and not on the Civil Service list, were assigned to duty with the Fire Department. This precipitated the instant suit.
On October 30, 1974 William Druz, Chief Examiner and Secretary of the New Jersey Civil Service Commission, in an affidavit filed in this case, stated that he had instructed municipalities that they could legally make appointments under CETA so long as the appointees were "identified" to the Department of Civil Service. After the dismissal of the complaint below, the Commission, on November 12, 1974, issued a statement of "interim policy" to the effect that jurisdictions operating under the Civil Service Act "may continue to make appointments under the CETA-II Program."
In essence, plaintiffs contend that since Paterson has adopted the Civil Service Act, it may not hire as firemen persons not on the Civil Service list, and therefore the hirings under CETA violate N.J. Const. (1947), Art. VII, § I, ¶ 2, and N.J.S.A. 11:21-3. They further contend that *224 the approval of such hiring is beyond the power of the Commission.
N.J.S.A. 11:21-3 provides that appointments to the "civil service" of a municipality which has adopted Civil Service shall be made only according to merit and fitness. And N.J.S.A. 11:22-3 provides that the classified service (which comprehends firemen) shall include all persons in the "paid service" of such municipality.
In determining whether employees are in the "paid service" of a governmental entity and therefore under civil service protection, the courts have found the significant factor to be whether they were paid by that entity. Thus, employees of the Newark Public Library were held to have Civil Service status in the City of Newark even though the library was a separate corporation. The court's reasoning was that since the employees' salaries were paid with city funds, they were in the paid service of the city. Newark Library Trustees v. Civil Serv. Comm'n, 86 N.J.L. 307 (E. & A. 1914). The holding in this case was based on the court's prior decision in Sullivan v. McOsker, 84 N.J.L. 380 (E. & A. 1912), which held that a jail warden, though appointed by the county sheriff, was in the civil service of the county since the county paid his salary. In McOsker the court succinctly said (at 383), "The fact that the county pays the warden for such services out of the county funds makes him an employee in the service of the county, and therefore within the protection of the Civil Service law." On the other hand, in DeAngelis v. Addonizio, 103 N.J. Super. 238 (Law Div. 1968), where employees of the hospital of the New Jersey College of Medicine and Dentistry were held not to be included in the state civil service, one of the factors in the determination was that the major source of the hospital's revenue was derived from "non-state sources." At 253. The rationale of the above cases leads us to conclude that since the CETA employees are paid from federal funds rather than from Paterson's funds, they are not in the "paid service" *225 of the city and therefore are not subject to the Civil Service Act.
CETA employees have none of the protection against dismissal or demotion that is accorded regular civil service employees. Nor do they have the reemployment rights that such employees receive. CETA employees can lose their jobs at any time if the Federal Government cuts off its funding of the program. Moreover, if a CETA employee desires to secure a permanent municipal job, he must take the appropriate Civil Service test and achieve appointment in the usual way. See DeLarmi v. Fort Lee, 132 N.J. Super. 501 (App. Div. 1975), which held that employees under the Emergency Employment Act (EEA), the predecessor of CETA, had to go through normal channels to obtain permanent job status.
CETA is carefully drawn so as not to interfere either with the job opportunities of those awaiting regular municipal employment or with the job security and promotions of those already employed. CETA requires that all jobs funded under the program must be in addition to those that the locality could fund on its own. 29 U.S.C.A. § 845(c) (25). It also forbids the use of CETA funds to displace current employees or to fill job openings created by layoffs. 29 U.S.C.A. §§ 845(c) (8), 848(a) (1) (B). The act specifies that promotional opportunities of current employees cannot be infringed by creating CETA jobs at higher than entry level positions. 29 U.S.C.A. § 845(c) (24).
Since oral argument we have been advised that the Civil Service Commission has adopted subpart 20-5.110 concerning a federal regulation (29 C.F.R. § 96.24(d)) which forbids the continued employment of CETA workers where regular employees performing equivalent work have been laid off. The Commission's interpretation of that regulation is as follows:
If an appointing authority has a CETA position and a regular position in which the employees are performing substantially equivalent jobs and the regular employee is laid off, the CETA employee cannot remain working in that position. The prime sponsor (the appointing *226 authority) has the option of appointing employees laid off from regular positions to the positions vacated by CETA employees, assuming they qualify under CETA. CETA employees are to be either transferred to positions not affected by the layoffs or be laid off.
From all we have said it is clear that the rights of civil service employees and the interests of the merit system are not impinged by the hiring of employees under the CETA program. If the Commission had prevented the city from hiring separately under the CETA program, the result would have been that the city would have lost its CETA grant, no one would have been hired, and the objective of providing job opportunities for the economically disadvantaged would have suffered, as would the city's need for more firemen.
For the foregoing reasons, we conclude that the city was empowered to hire firemen pursuant to the CETA plan and without reference to the Civil Service list, and that the Commission had authority to approve such hiring under the circumstances here. The dismissal of the complaint and the judgment in favor of defendants is affirmed.
NOTES
[1] Plaintiff White is a Paterson fireman and president of the local Firemen's Mutual Benefit Association; plaintiff Ricciardi is on the Paterson civil service list awaiting appointment as a fireman, and plaintiff Milkiewicz is a taxpayer of the city. Defendant Kane is chief of the Paterson Fire Department.