IN THE MATTER OF HUDSON COUNTY PROBATION DEPARTMENT—TITLE IV–D INVESTIGATORS.

Superior Court of New Jersey
Appellate Division

Argued March 10, 1981—Decided March 20, 1981.

Before Judges MATTHEWS, MORTON I. GREENBERG and COLEMAN.

*John A. Smith, III*, Assistant County Counsel, argued the cause for appellants Freeholders of Hudson County (*Francis P. Morley*, Hudson County Counsel, attorney).

*Mark Fleming*, Deputy Attorney General, argued the cause for respondent Civil Service Commission (*John J. Degnan*, Attorney General, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel; *William Harla*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MATTHEWS, P. J. A. D.

The Freeholders of Hudson County appeal from a final decision of the Civil Service Commission issued on March 18, 1980 which held that persons hired as investigators in the county's Probation Department pursuant to Title IV, Part D of the 1975 amendments to the Social Security Act, 42 *U.S.C.A.* § 651 *et seq.*, are "permanent" Civil Service employees and accordingly are subject to the provisions of *N.J.S.A.*, Title 11 (Civil Service).

Part D of the Social Security Act, entitled "Child Support and Establishment of Paternity" (42 *U.S.C.A.* § 651) states:

For the purpose of enforcing the support obligations owed by absent parents to their children, locating absent parents, establishing paternity and obtaining child support, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

Accordingly, 42 *U.S.C.A.* § 655 stipulates that states will be reimbursed for 75% of amounts expended for the operation of "plans" that are approved under 42 *U.S.C.A.* § 654.

In April 1978 it was determined that in accordance with the "Title IV–D" program it would be necessary for the Probation Department to hire an additional 20 investigators, clerk typists, and to assign three probation officers and one principal probation officer in order to meet the requirements of a federally-conducted audit scheduled for June 1978. On April 20, 1978 the Department of Civil Service certified a list of "eligibles" for the position of probation department investigator. Shortly thereafter, in June, 20 persons from this list were hired as investigators by the county. The newly hired investigators were classified as "temporary" employees by the county and notified of that fact. Thereafter, the county submitted the required personnel forms to the Department of Civil Service. The Department concluded that the newly hired investigators should be classified as permanent employees, and promptly amended the "temporary" classification given to them by the county.

On June 15, 1978 the county contested the Department's decision to amend the county's classification and requested that the Department review the matter and reverse its determination. The Department rejected the county's request, maintaining that it was correct in classifying the investigators as permanent employees. In support of its position the Department relied heavily upon *N.J.A.C.* 4:1–14.5, which provides that with regard to local government services temporary appointments are limited to a maximum of four months.

The county submitted a letter, designated as a notice of appeal, to the Department on July 11, 1978 in which a hearing and a review of the matter in question were requested. On August 21, 1978 the Director of Hearings and Regulations for the Department notified the county that the matter would be treated as an administrative appeal subject to a review of the written record. In addition, the county was invited to inspect and supplement the record.

The Civil Service Commission announced its final decision on March 18, 1980, affirming the Department's classification of the investigator positions as permanent. Thereafter, on April 22, 1980 the Department issued a payroll disapproval. Two days later, on April 24, 1980, the county filed this appeal. On May 1, 1980 we entered an order staying the final decision entered by the Civil Service Commission on March 18, 1980 and the resulting payroll disapproval issued on April 22, 1980 pending our disposition of the appeal.

*N.J.S.A.* 11:22–3 provides:

The classified service shall include all persons in the *paid service of a county, municipality or school district* operating under this subtitle not included in the unclassified service as enumerated in section 11:22–2 of this title. [Emphasis supplied]

The county maintains that the investigators in question are outside the coverage of Civil Service, for they are not in the "paid service" of Hudson County since the county is reimbursed for 75% of their salaries through federal funding. The Commission, on the other hand, disputes the contention that the investigators should have been classified as temporary. At the base of their argument is *N.J.A.C.* 4:1–14.5, which states in pertinent part:

No temporary appointment *shall* extend beyond six months in State service nor *four months* in local services. *Should a temporary position not be terminated at the expiration of such respective periods, the position shall be considered a permanent position ....* [Emphasis supplied]

It should be noted that only four of the investigators originally hired remain with the Probation Department. However, it is undisputed that the employment of these investigators has exceeded four months.

The core of the county's appeal lies in its argument that the investigators were improperly classified as permanent Civil Service employees since the "IV–D" program is funded primarily by the Federal Government and has been "mandatorily imposed upon the County." In support of its argument the county relies heavily upon our decision in *White v. Paterson*, 137 *N.J.Super.* 220 (App.Div.1975). Plaintiffs in *White* challenged the right of

the City of Paterson to hire as firemen persons who had not qualified under the Civil Service Act but who were hired pursuant to Title II of the federal Comprehensive Employment and Training Act of 1973 (CETA). We determined that Paterson was empowered to hire firemen under the CETA program without having to take into account Civil Service requirements. 137 *N.J.Super.* at 226. In reaching our decision we noted that in determining whether employees are in the "paid service" of a governmental entity (*N.J.S.A.* 11:22–3, above) it has generally been held that "the significant factor" is whether the employees are paid by the entity. We stated that "since the CETA employees are paid from federal funds rather than from Paterson's funds, they are not in the 'paid service' of the city and therefore are not subject to the Civil Service Act." 137 *N.J.Super.* at 224.

Although at first blush *White* appears to be persuasive authority, we find that it can be distinguished from the situation at hand in several ways. First, it is clear that CETA and the Title IV–D program were enacted for different purposes. As we noted in *White*, the object of CETA is to "aid the chronically unemployed during the current economic crisis by supplying them with jobs, and at the same time training them in useful skills which can lead to permanent employment in the public or private sectors." 137 *N.J.Super.* at 223. It is readily apparent from a reading of 42 *U.S.C.A.* § 651, however, that the Title IV–D program was not implemented for the purposes of providing job training and employment opportunities for the economically disadvantaged.

Second, a distinction exists with regard to the duration of employment under the respective acts. 29 *U.S.C.A.* § 824(h)(2) provides that "No [CETA] participant may be paid wages from funds under this Act for public service employment for more than *78 weeks* in a 5-year period." (Emphasis supplied). The Title IV–D program, on the other hand, does not impose any restrictions with regard to the duration of employment, thus making the program of indefinite duration. We think it impor-

tant to note that in *White* we were not faced with circumstances that required us to address the impact of *N.J.A.C.* 4:1–14.5 (*i. e.*, no temporary appointment shall extend beyond four months in local service).

Further, in *White* we indicated that CETA was designed so as not to require the prospective employee to go through the "normal channels" in order to obtain employment with governmental entities. See 137 *N.J.Super.* at 225. This is to be compared to the situation here where the 20 IV–D investigators in question were chosen from a list of "eligibles" that had been certified and issued by the Department of Civil Service.

The county also relies on *DeAngelis v. Addonizio*, 103 *N.J.Super.* 238 (Law Div. 1968), in support of their contention that the federal funding of the IV–D program mandates that the investigators be classified as temporary employees. We find the county's reliance on *DeAngelis* to be misplaced. Plaintiffs in *DeAngelis* were former employees of a city-owned hospital. The city transferred the hospital to the New Jersey College of Medicine and Dentistry and the employees subsequently brought an action seeking a judgment declaring that they had full Civil Service status. The Law Division judge held that the employees were not entitled to full Civil Service status. There can be no doubt that the trial judge in *DeAngelis* placed importance on the source of financial support in determining whether the hospital employees were in the service of the college or of the State. See *DeAngelis* at 253. Such, however, was not the sole determinant. The trial judge stated:

> It is significant also that the college has all powers incident to the proper government, conduct and management of the school "without recourse or reference to any department or agency of the State," except as may be specifically provided in the legislation. [at 252]

Here, there does not appear to be any provision in Title IV–D or elsewhere which provides for federal control of state or local employees involved in the IV–D program. That is not to say, however, that there is no federal involvement in the IV–D program except for funding. The Secretary of HEW has numerous duties, among which are the establishing of standards

for the respective state programs, the establishing of certain minimum organizational and staffing requirements for the respective state units and the evaluation of the implementation of the state programs. 42 *U.S.C.A.* § 652.

The Commission also relies on certain regulations issued by the Office of Personnel Management under the Intergovernmental Personnel Act, 42 *U.S.C.A.* § 4701 *et seq.*, to refute the notion that IV–D investigators are under federal control. Although we question the applicability of the Intergovernmental Personnel Act to the situation before us since it "focuses on 3 basic problems in public manpower area: interchange of federal, state and local employees; training problems; and personnel management" (42 *U.S.C.A.* § 4701, interpretative notes), the Commission does cite one regulation that directly involves the Social Security Act (42 *U.S.C.A.* § 601 *et seq.*) and which supports its contention that the IV–D investigators are not under federal control:

Federal agencies are interested in the development and continued improvement of State and local personnel systems, but, under the Intergovernmental Personnel Act, Social Security Act and other grant statutes, they may not exercise authority, direction or control over selection, assignment, advancement, retention, compensation or other personnel actions with regard to any individual State or local employee. [5 C.F.R. § 900.601(c)]

The Commission also argues that *Atlantic Comm. College v. Civil Service Comm'n*, 59 *N.J.* 102 (1971), supports its position. There the Supreme Court reversed the Commission's ruling that nonprofessional and noninstructional employees of county community colleges were subject to Civil Service. Justice Proctor, who delivered the opinion of the court, stated that the applicable statutory scheme clearly demonstrated that county colleges were not agencies of county government, but rather were separate political subdivisions. The court rejected the contention that the county had retained substantial control over the development and management of the college by virtue of its power of appointment and representation on the board of college trustees. In language germane here, Justice Proctor wrote:

Although members of the board of trustees are appointed by the county board of freeholders, once appointed the board of trustees is given extensive power to

appoint officers, agents and employees of the college, fix their compensation and terms of office .... [at 109]

■ While we have no doubt that the source of funding is an important factor to be taken into account when deciding a question of this nature, *see Atlantic Comm. College,* above, 59 *N.J.* at 110 to 111, it is not the only factor to be taken into account. We note also that the federal funding in this case is substantial and is clearly the lifeblood of the Title IV–D program. There is no correlation, however, between the percentage of federal funding and the control which the HEW exerts over the IV–D investigators. In addition, we find no indication that the Title IV–D program is temporary.

In *DeTore v. Local # 245, etc.,* 615 *F.*2d 980 (3 Cir. 1980), plaintiff was employed as a clerk-typist by the Jersey City Department of Public Works. Her position was funded by CETA. Her employment was terminated and she brought a civil rights action challenging the basis of her discharge. The Secretary of Labor, who, among others, was named as a defendant, brought a motion to dismiss for failure to state a claim upon which relief could be granted. The District Court granted the Secretary's motion and the Third Circuit affirmed. The Circuit recognized that CETA conditioned the granting of federal funds on the local compliance with many statutory provisions and regulations but nevertheless found that under the circumstances the Secretary of Labor could not be held vicariously liable for plaintiff's discharge. In reaching its decision the Circuit heavily relied on the fact that the Secretary did not exercise any control over the Jersey City defendants' decision to discharge plaintiff. The court also noted that there was no "thorough day-to-day federal supervision of local operations" and that crucial planning and implementation decisions were made at the local level. *Id.* at 983–984.

The county's argument that the investigators were hired pursuant to an "emergency" and thus should have been classified by the Commission as temporary is equally unpersuasive in light of *N.J.S.A.* 11:22–15:

No temporary employment mentioned in section 11:22–14 [temporary emergency employment] of this title shall continue for a longer period than two months, nor shall successive temporary appointments be made to the same position. If, however, after the presentation of a request by the head of the department in which the temporary appointment has been made prior to termination of the two-month period, showing that the emergency requiring the temporary employment still exists, the commission may, after a consideration of the circumstances, permit an extension of the employment of not to exceed two months.

Finally, and as noted by the Commission, our courts have recognized that the Civil Service Act (*Title* 11) is to be given broad construction in order to effectuate its legislative purposes. *Mastrobattista v. Essex Cty. Park Comm'n*, 46 *N.J.* 138, 147 (1965); *Laboda v. Clark Tp.*, 40 *N.J.* 424, 434 (1963). As stated by this court in *Walsh v. Civil Service Dep't*, 32 *N.J.Super.* 39 (App.Div.1954), certif. granted 17 *N.J.* 182 (1955) (subsequently dismissed):

In more recent years the problem of deciding the classification of a position in the state or county service which is not assigned to the unclassified division, has been given specifically to the Civil Service Commission. *N.J.S.A.* 11:7–11; 11:22–50; *L.* 1948, *c.* 121, §§ 2, 6. And when the Commission has exercised this authority the courts will interfere only where the conclusion reached is patently incompatible with the language and spirit of the law.

[at 44]

Affirmed.