897 A.2d 399 (2006)
385 N.J. Super. 369
In the Matter of Joseph DENNIS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2005.
Decided May 10, 2006.
*400 Daniel J. Zirrith, Livingston, argued the cause for appellant Joseph Dennis (Fox and Fox, attorneys; Mr. Zirrith, of counsel and on the brief).
Susanne Culliton, Deputy Attorney General, argued the cause for respondent Police and Firemen's Retirement System (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney *401 General, of counsel; Ms. Culliton, on the brief).
Matthew T. Priore, Municipal Attorney, argued the cause for respondent City of Clifton (Clifton Law Department, attorneys; David R. Bruins, Assistant Municipal Attorney, on the brief).
Before Judges KESTIN, COLEMAN and SELTZER.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
Petitioner challenges the decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS) that his enrollment in PFRS was not required while he was employed as a City of Clifton police officer under the Comprehensive Employment and Training Act of 1973 (CETA), 29 U.S.C.A. § 801 to 999 (repealed 1982). The Board determined, however, that, in the circumstances, petitioner was entitled to purchase PFRS service credits for the time of his CETA employment, and the Board established the rate at which such service credits could be purchased. Petitioner, on appeal, also challenges the rate.
On May 1, 1978, petitioner was hired as a police officer with the City of Clifton (City) in a position funded by CETA, a federal program that assisted economically disadvantaged state and local governments by providing the salaries of necessary employees. Petitioner remained in the CETA program until December 31, 1980. From January 1, 1981 to June 30, 1981, the City employed petitioner as a provisional police officer. On July 1, 1981, the City appointed him to a permanent position as a public safety officer and enrolled him in PFRS.
In October 1991, petitioner requested that the Division of Pensions (Division) grant him permission to purchase service credit for the period from May 1, 1978 to June 30, 1981. By letter dated March 14, 1992, the Division responded that the cost for the credit was $16,701.18. Petitioner took no action in response to that letter.
In April 2000, petitioner again wrote to the Division and requested a statement of the cost to purchase service credit from May 1, 1978 to July 1, 1981. He requested the rate for May 1, 1978 to April 30, 1979, based on his salary on the date of the letter; and the rate for May 1, 1979 to June 30, 1981, based on his salary during that period.
The Division responded in September 2000, informing petitioner that the total cost for the service credit from May 1, 1978 to June 30, 1981 was then $28,650.86. That calculation, according to the Division, was "based on your nearest age at the time of your request and your highest salary as a member of the retirement system."
Petitioner appealed the rate to the Board. He alleged that, pursuant to N.J.A.C. 17:4.2-6(d), he should have been enrolled in PFRS on the thirteenth month of employment under the CETA program, June 1, 1979, and that he was entitled to receive service credit as a delinquent enrollee from June 1, 1979 to June 30, 1981.
The Board rejected petitioner's contention. It reasoned that N.J.A.C. 17:4-2.6(a), not (d), governed this case and, thus, petitioner had not been entitled to enrollment in PFRS until he received his permanent appointment on July 1, 1981. On that date, the City did enroll him in PFRS; thus he was not entitled to any credit as a delinquent enrollee. The Board said, however, that petitioner himself could purchase the May 1, 1978 to June 30, 1981 service credit, as the Division had determined.
*402 In May 2002, petitioner requested a hearing. The matter was referred to the Office of Administrative Law as a contested case. See N.J.S.A. 52:14B-2(b); -9; -10. The City intervened on the side of the Board, and the parties waived oral argument before the administrative law judge (ALJ) assigned to the matter.
In an "order granting partial summary decision," rendered on October 31, 2003, the ALJ ruled agreeably to petitioner, holding that, pursuant to N.J.A.C. 17:4-2.6(d), petitioner should have been enrolled in PFRS on the thirteenth month of his CETA employment, May 1, 1979. The ALJ determined, pursuant to N.J.S.A. 43:16A-15.1, that the City was required to contribute half of the purchase rate for service credit from May 1, 1979 to June 30, 1981, plus half of petitioner's share.
The ALJ declined to set the rate of purchase and contribution for May 1, 1979 to June 30, 1981, however, on the basis of prior holdings that, in the interests of equity, a lower rate than established in N.J.S.A. 43:16A-11.4 can be set. See, e.g., Geller v. Department of Treasury, 53 N.J. 591, 252 A.2d 393 (1969). That statute provides a rate of purchase based on the employee's salary at the time of purchase or the highest salary the employee earned through the State. Because the record did not contain information on the circumstances surrounding petitioner's purchase requests, the ALJ reserved decision on the purchase rate until a record could be made.
At a hearing on March 9, 2004, petitioner testified that, initially, he did not recall having requested a purchase price for service credit in 1991, but after the Division produced his request letter in discovery, he acknowledged that he had made the request. Petitioner testified that he sent the April 2000 letter to the Division after speaking with a co-worker, Bob Glover, in 1999, about a then-recent decision by the Board allowing Glover to purchase service credit for his period of employment under CETA. Glover, like petitioner, had been hired by the City under the CETA program in May 1978. According to petitioner, it was not until he spoke with Glover and read the Board's decision that he knew he could apply to purchase the CETA-time credits.
In an April 27, 2004 initial decision disposing of the remaining issues in the matter, the ALJ concluded that petitioner's purchase rate for May 1, 1978 to April 30, 1979, should be "based on his present age and rate of pay," as there were no equities weighing in favor of a lower purchase rate. She concluded, however, that it would be unfair to impose the same rate for the period of May 1, 1979 to June 30, 1981, because the Division had prohibited the City from enrolling CETA employees in PFRS during that time. According to the ALJ, the taxpayers would incur an undue hardship if the City were required to contribute at an increased rate. Instead, the ALJ recommended that the rate for May 1, 1979, to June 30, 1981, be based on "the rate of pay and age of the petitioner during that period."
The Board rejected the ALJ's decision to the extent it had recommended that petitioner was entitled to purchase pension credit for his CETA service as a delinquent enrollee. The Board held, instead, that petitioner was not entitled to that type of service credit for May 1, 1979 to June 30, 1981, because he could not have been enrolled in PFRS until 1981 when he became a permanent employee. The Board also held, however, that because petitioner's CETA employment had led to a permanent position, he could purchase all of his CETA time at a rate based on his age and salary at the time he requested purchase. In the latter regard, i.e., regarding *403 the rate of purchase, the Board adopted the ALJ's initial decision.
In appealing from the Board's decision, petitioner argues that the Board erred in holding that he was not entitled to enroll in PFRS on the thirteenth month of his CETA employment; in setting the rate at which petitioner could purchase his CETA service credit, especially in holding the City was not responsible for retroactive contribution; and in setting petitioner's purchase rate responsibility for his initial twelve months of temporary employment following the CETA-supported term. Petitioner contends that the Board's decision rejecting the ALJ's finding that the City should have enrolled him in PFRS on the thirteenth month of his employment, June 1, 1979, was arbitrary, capricious and unreasonable.
On appeal from an agency determination, we review the final decision of the agency head, not the ALJ's initial decision. See De Vitis v. New Jersey Racing Comm'n, 202 N.J.Super. 484, 490, 495 A.2d 457 (App.Div.), certif. denied, 102 N.J. 337, 508 A.2d 213 (1985). We give substantial deference to the agency head's determination and reverse "only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Stevens v. Board of Trustees, PERS, 294 N.J.Super. 643, 651, 684 A.2d 104 (App.Div.1996)(emphasis omitted)(quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980)).
Although we are not obliged to defer to an agency decision on a question of law, Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973), substantial respect is accorded an agency decision interpreting and applying the statute the agency was created to enforce. We will reverse the decision only if it is "plainly unreasonable." Stevens, supra, 294 N.J.Super. at 652, 684 A.2d 104 (quoting Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). Moreover, "[a]n administrative agency's interpretation of its regulations is entitled to substantial weight." Simon v. Board of Trustees, PFRS, 233 N.J.Super. 186, 195, 558 A.2d 490 (App.Div.), certif. denied, 117 N.J. 652, 569 A.2d 1348 (1989).
The enrollment date regulation governing PFRS, N.J.A.C. 17:4-2.6, as it existed in 1977, provided the basis for determining the date on which the City was required to enroll petitioner in PFRS. That regulation read:
(a) An employee who is permanently appointed from a civil service list shall be considered as beginning his service on the date of his regular appointment, and the compulsory enrollment date shall be fixed as the first month following the completion of the equivalent of a working test period of four months.
(b) An employee in the unclassified service shall be considered as beginning service on the date of his original appointment and the compulsory enrollment date shall be fixed as of the first of the month following the completion of the equivalent of a working test period of four months.
(c) The permanent appointment of an employee appointed by a local employer not covered by civil service shall constitute the date the employee originally accepted employment in a regular budgeted position. The date of compulsory enrollment shall be the first of the month following the completion of the equivalent of a working test period of four months.
(d) An employee who does not meet the requirements for enrollment cited in subsections (a), (b) and (c) of the section, may be considered a temporary employee *404 by his employer for as long as a one year period following the employee's date of hire, but if his employment continues into his second year, he will be required to enroll immediately; his compulsory enrollment date will be the first of the month following the end of the one year (12-month) period.
[N.J.A.C. 17:4-2.6 (1977).]
To decide which subsection of that regulation applied to this case, it was necessary to determine whether CETA employment was temporary or permanent in nature.
As the ALJ held, case law defines CETA employment as temporary. In White v. City of Paterson, 137 N.J.Super. 220, 348 A.2d 798 (App.Div.1975), we noted the differences between state civil service employees and CETA employees. CETA employees were paid from federal funds; were subject to dismissal if funds were cut-off; had to be dismissed before a state employee could be laid off; and were not protected by the Civil Service Act. Id. at 224-26, 348 A.2d 798. If a CETA employee sought permanent employment with the State or local government, he was required to take a civil service exam and receive appointment from a civil service list, just like any other candidate for appointment. Id. at 225, 348 A.2d 798.
The ALJ concluded that subsection (d) of N.J.A.C. 17:4-2.6 applied to this case and mandated that petitioner should have been enrolled in PFRS on the thirteenth month of his temporary employment, June 1, 1979. The Board rejected that recommendation for two reasons.
First, the Board observed that, pursuant to N.J.S.A. 43:16A-1(2)(a), only permanent employees were eligible for enrollment in PFRS. That principle was reinforced by the Division's long-standing position, from at least 1978 to 1994, that time served as a CETA employee was not creditable for pension purposes. Because petitioner was not a permanent employee until July 1, 1981, the Board concluded he was not entitled to enroll in PFRS until that date.
Second, the Board reasoned that subsection (a) of N.J.A.C. 17:4-2.6, not subsection (d), governed this matter. According to the Board, subsections (a) and (b) applied to civil service jurisdictions, while (c) applied to non-civil service jurisdictions, and (d) "applie[d] only to an employee `who does not meet the requirements for enrollment cited in subsections (a), (b) and (c).'" Because the City was a civil service jurisdiction, and petitioner's position was classified, the Board determined that subsection (a) governed this matter. It read subsection (a) as providing that an employee is "eligible for enrollment only upon the date of his regular permanent employment."
Petitioner has not disputed that he was a temporary employee while in the CETA program, and he concedes that, pursuant to Division policy, CETA employees were not permitted to enroll in PFRS between 1978 and 1981. He argues, however, that pursuant to the "plain language" of N.J.A.C. 17:4-2.6, subsection (a) applied to him only after he received permanent employment in 1981. Prior to that time, he contends, subsection (d) applied and mandated that he be enrolled in PFRS on the thirteenth month of his employment as a temporary employee.
It seems obvious that the Board erred in its interpretation of N.J.A.C. 17:4-2.6(a). That provision could not have applied to petitioner until the City gave him a permanent appointment on July 1, 1981, because it only addresses enrollment for permanent employees, and petitioner was not a permanent employee until July 1, 1981.
Nevertheless, we reject petitioner's contention that N.J.A.C. 17:4-2.6(d) applied to this case and mandated that he be enrolled in PFRS on the thirteenth month of his *405 CETA employment. In the light of the statutory provisions governing PFRS, the term "temporary employee" used in N.J.A.C. 17:4-2.6(d) must be read as limited to temporary employees paid by the State or a local government, not by a federal grant.
N.J.S.A. 43:16A-4 provides: "Only service as a policeman or fireman paid for by an employer . . . shall be considered as creditable service for the purposes of this act." "Employer" is defined as "the State of New Jersey, the county, municipality or political subdivision thereof which pays the particular policeman or fireman." N.J.S.A. 43:16A-1(6). Clearly, the requirement that employees be enrolled in PFRS after twelve months of temporary employment applies only to those employees paid by the State or a local government.
The definition of "member" in N.J.S.A. 43:16A-3(1) confirms the Legislature's intent to exclude temporary, federally-funded employees from PFRS. It provides that "any person becoming a full-time policeman. . . shall become a member of this retirement system as a condition of his employment." N.J.S.A. 43:16A-3(1). "Policeman" is defined as "a permanent, full-time employee of a law enforcement unit." N.J.S.A. 43:16A-1(2)(a)(emphasis supplied).
The Division's long-standing policy demonstrates a consistent exclusion of CETA employees from PFRS. The Board, in its decision, cited four Division documents in which CETA employees were treated as temporary and ineligible for enrollment in PFRS. Indeed, according to the Board, it was not until 1994, in the Glover decision referred to above, that the Division allowed a permanently appointed officer who was a former CETA employee to purchase CETA time as service credit. See Glover v. Police & Firemen's Ret. Sys., 95 N.J.A.R.2d (TYP) 57 (1994).
We reject petitioner's contention that the Division's policy excluding CETA employees from PFRS conflicted with the purpose of CETA. "The object of [CETA was] to aid the chronically unemployed during the current economic crisis by supplying them with jobs, and at the same time training them in useful skills which can lead to permanent employment in the public or private sectors." White, supra, 137 N.J.Super. at 223, 348 A.2d 798. Economically limited governmental units might well have been discouraged from hiring CETA employees, or retaining them after twelve months, if those governmental units had been forced to contribute to PFRS to retain those employees. Cf. Lewis v. Board of Trustees, PERS, 366 N.J.Super. 411, 841 A.2d 483 (App.Div.), certif. denied, 180 N.J. 357, 851 A.2d 650 (2004) (state employees paid from a federal grant are excluded from the Public Employees' Retirement System so that they "will not be terminated because employers must use their limited financial resources for pension contributions").
In the initial decision and the final decision, both the ALJ and the Board regarded the Board's prior decision in Glover as influencing the result in this case. Both parties have dealt with Glover in framing their arguments on appeal.
Petitioner argues, as the ALJ determined based on Glover, that N.J.A.C. 17:4-2.6(d), not (a), applied. The issue in Glover was whether a permanent police officer could purchase service credit for time when he was employed as a CETA employee. Like petitioner in this case, Glover began employment with the City of Clifton as a police officer under the CETA program in May 1978. His employment ended on December 31, 1979, when CETA funding ran out. From June 3, 1980 to *406 April 22, 1982, he was re-employed under a State Law Enforcement Planning Agency (SLEPA) grant. In September 1982, the City hired him as a permanent police officer.
In 1992, Glover requested permission to purchase service credit for the temporary periods represented by his CETA- and SLEPA-funded appointments. The Board, adopting the initial opinion of the ALJ, granted his request, relying on N.J.S.A. 43:16A-4 and N.J.A.C. 17:4-2.6(d). N.J.S.A. 43:16A-4 provides that, "[a] member may purchase credit for temporary service as a policeman . . . if that temporary service shall have resulted, without interruption, in a valid permanent or probational appointment as a policeman." The Board found that Glover's temporary employment resulted, without interruption, in permanent employment on the thirteenth month of his employment under CETA.
In this matter, the Board interpreted Glover as providing only that a permanent employee may purchase service credit for temporary employment under the CETA program. To the extent Glover could be interpreted as requiring appointment to a permanent position on the thirteenth month of CETA employment and enrollment in PFRS, the Board expressly rejected that reading, reasoning:
If the Board were now to perpetuate the technical error stemming from its prior failure to modify the Initial Decision [of the ALJ] in Glover, there could be substantial negative policy implications. The consequences of retroactivity permitting enrollment for individuals who were not previously permitted entry into the PFRS during their CETA service are potentially enormous. Also, the cost of financing such enrollments, previously unbudgeted, would most likely be quite extensive.
Petitioner contends that this position is erroneous, among other reasons, because the Glover decision states only that the employee there requested the opportunity to purchase service time; the decision does not indicate that Glover requested or argued he was entitled to enrollment in PFRS on the thirteenth month of employment.
Petitioner has conceded that the Board is not restricted in its authority to limit, or abandon as erroneous, a position previously announced. He argues, however, that the ALJ's interpretation of the Glover decision was manifestly correct.
As we have noted, N.J.A.C. 17:4-2.6(d) applied only to temporary employees paid by the State or a local government. It did not apply to the petitioner in Glover, or to the petitioner in this matter, because eligibility for PFRS is limited to permanent policemen and firemen employed by the State or local government. See N.J.S.A. 43:16A-1(2)(a); N.J.S.A. 43:16A-3(1). Thus, the Board was correct in determining that petitioner was not entitled to enrollment in PFRS until he received permanent employment on July 1, 1981, and that, therefore, he was not entitled to any service credit for delinquent enrollment.
Petitioner also contends that the Board's determination requiring him to purchase his CETA service credits at a rate based on his age and salary at the time of his latest request was arbitrary, capricious and unreasonable. In this respect, the Board adopted the ALJ's recommendation that, pursuant to N.J.S.A. 43:16A-11.4, petitioner's purchase rate should be based on the rate that was applicable when he requested purchase, which the text of the Board's decision misstated as 2001. The record reflects that petitioner's request was in April 2000, not in 2001.
*407 The decision below relied on N.J.S.A. 43:16A-11.4, which provides, in relevant part, that
the member may purchase credit for all of the previous membership service by paying into the annuity savings fund the amount required by applying the factor, supplied by the actuary as being applicable to the member's age at the time of the purchase, to the member's salary at that time, or the highest annual compensation for service in this State for which contributions shall have been made during any fiscal year of membership or to the highest annual compensation for service in this State during any fiscal year for which credit is purchased, whichever is the highest. The purchase may be made in regular installments, equal to at least 1/2 the normal contribution to the retirement system, over a maximum period of 10 years.
Although this statute fixes the basis for determining the general purchase rate, it is well established that deviation from that standard in favor of a lower purchase rate is possible to satisfy equitable considerations. See, e.g., Geller, supra, 53 N.J. at 597-600, 252 A.2d 393.
Here, the Board chose not to depart from N.J.S.A. 43:16A-11.4, finding that it would not be inequitable to require that petitioner purchase his CETA service credit at the rate determined by the time of his most recent request. Petitioner had declined to "present any evidence to show that there was a specific hardship that prevented him from purchasing service" at the statutory rate, and he failed to explain why he did not pursue his purchase request in 1991.
Petitioner argues also that it would be unfair to require him to purchase the CETA service credit at a rate based on his age and salary in 2000 because, prior to the Glover decision in 1994, it was impossible to purchase CETA credit at all. We reject all of petitioner's arguments addressed to the rate, as the Board did. Petitioner failed to present any evidence establishing the existence of equities weighing in favor of a departure from the terms of N.J.S.A. 43:16A-11.4; and he has not provided any other adequate basis for reaching such a result.
All other arguments advanced by petitioner are either lacking in sufficient merit to warrant discussion in a written opinion, see R. 2:11-3(e)(1)(D), (E), or have been rendered moot by our disposition of the issues addressed.
The decision of the Board is affirmed.