a trap owes no duty to the one who did the trapping." 233 *F*. 2d at 510.

The judgment is reversed. Judgment will be entered in favor of Pioneer rescinding the title policy upon repayment of all premiums paid therefor.[2]

---

[2]Conceivably there may still be title in Lucas to the 13 acres, predicated on adverse possession or otherwise. See n. 1, *supra.* But at trial Pioneer appears to have taken the position that Lucas does not have title; thus, there is a real question as to whether it could properly defend the Baker's quiet title action even if there were coverage. See *Sussex Mut. Ins. Co. v. Hala Cleaners, Inc.*, 75 *N. J.* 117 (1977).

BERKELEY R. SMITH, JR., PETITIONER-APPELLANT, v. E.T.L. ENTERPRISES, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 9, 1977—Decided January 13, 1978.

344

346

Before Judges LYNCH, BISCHOFF and KOLE.

*Mr. Malcolm A. Colton* argued the cause for appellant (*Messrs. Colton* and *Colton,* attorneys).

*Mr. Norman A. Doyle, Jr.* argued the cause for respondent.

The opinion of the court was delivered by

LYNCH, P. J. A. D. In this case petitioner appeals from an order of the Division of Workers' Compensation which dismissed his petition on the ground that petitioner was an independent contractor at the time of the accident involved and was not an employee of respondent.

Because of the inadequate findings of fact in the Division we have determined to reverse and remand for specific findings of fact and conclusions.

▇ The totality of findings made by the judge of compensation in dismissing the petition are contained in the following few lines in the transcript:

THE JUDGE: After considering the evidence presented and the testimony of the petitioner, cross-examination by the respondent, the exhibits presented, I find that the petitioner in accordance with the equipment lease or rental equipment lease, R-1 in evidence, that the petitioner was an independent contractor.

Therefore, the respondent is not responsible for the accident in which the petitioner was involved in [*sic*].

Obviously those "findings" are totally inadequate.

At the risk of repetition, yet with the hope of some educational value, we repeat what is required in making findings of fact.

In *Application of Howard Savings Institution of Newark*, 32 *N. J.* 29 (1960), the Supreme Court said:

> It is axiomatic in this State by this time that an administrative agency acting *quasi*-judicially must set forth basic findings of fact, supported by the evidence and supporting the ultimate conclusions and final determination, for the salutary purpose of informing the interested parties and any reviewing tribunal of the basis on which the final decision was reached so that it may be readily determined whether the result is sufficiently and soundly grounded or derives from arbitrary, capricious or extra-legal considerations. *New Jersey Bell Telephone Co. v. Communications Workers of America*, 5 *N. J.* 354 (1950) ; *cf. Grundlehner v. Dangler*, 29 *N. J.* 256, 271–272 (1959). [at 52]

In *Van Realty, Inc. v. Passaic*, 117 *N. J. Super.* 425 (App. Div. 1971), the Appellate Division remanded a tax assessment case, noting that the decision below merely recited the expert testimony presented at the hearing and failed to make any independent findings. The court declared:

> The reversals here may serve to alert the Division, and all *quasi*-judicial and administrative agencies, to their duty to make adequate findings of fact and to express the reasons for their decisions. There is a compelling need for such bodies to understand what constitutes an adequate finding of fact, the practical reasons why they are mandated, the distinctions between ultimate and basic facts, and the necessity that the findings have evidential support. It is equally necessary that such agencies understand why their reasons must be adequately expressed. See particularly, *Davis, Administrative Law Treatise* (1958), § 16.01 *et seq.* at 435–490, and 2 *Cooper, State Administrative Law* (1965), at 472–478. For New Jersey guidelines, see *In re Erie Railroad System*, 19 *N. J.* 110 (1955) ; *D., L. & W. R. Co. v. Hoboken*, 10 *N. J.* 418 (1952) ; *In re Kresge-Newark, Inc.*, 30 *N. J. Super.* 489 (App. Div. 1954), and *Samuel Hird & Sons, Inc. v. Garfield*, 87 *N. J. Super.* 65 (App. Div. 1965). [at 429]

 Further, besides stating findings of fact, *quasi*-judicial administrative decisions must set forth an "analytical expression of the basis which, applied to the found facts, led to the holdings below." *Benjamin Moore & Co. v. Newark*, 113 *N. J. Super.* 427, 428 (App. Div. 1975).

In the case at bar neither the judgment of dismissal nor the oral opinion rendered at the hearing reflect these standards. The briefest examination of them shows them to be conclusory and without reference to any of the testimony presented at the hearing. Nor is there any legal analysis of the contentions raised by the parties. This failure is particularly distressing because the testimony below is so unclear as to make the exercise of original jurisdiction on the appellate level unsatisfactory. *R.* 2:10–5. Indeed, several important factual issues may turn upon the credibility of the parties.

██ In the legal analysis of the evidence the judge of compensation on remand shall be guided by the following legal principles. In determining whether an individual is an employee within the provisions of the Act, the court must consider all of the circumstances attendant upon the relationship of the parties. *Buchner v. Bergen Evening Record,* 81 *N. J. Super.* 121, 128 (App. Div. 1963); *Biger v. Erwin,* 108 *N. J. Super.* 293, 298 (Cty. Ct. 1970), aff'd 57 *N. J.* 95 (1970). The term "employee" should be given neither a mechanical nor overly restrictive interpretation. *Marcus v. Eastern Agricultural Ass'n, Inc.,* 58 *N. J. Super.* 584, 602 (App. Div. 1959), rev'd, adopting Judge Conford's dissent, 32 *N. J.* 460 (1960). Rather, the term must be construed liberally in order to bring as many cases as possible within the coverage of the act. *Hannigan v. Goldfarb,* 53 *N. J. Super.* 190, 195 (App. Div. 1958); see *Rutherford v. Modern Transp. Co.,* 128 *N. J. Super.* 504, 509 (Law Div. 1974).

██ Also, the court must bear in mind that the purpose of the Workers' Compensation Act is to pass on the cost of industrial accidents as part of the cost of the product. *Marcus v. Eastern Agricultural Ass'n, Inc., supra,* 58 *N. J. Super.* at 603; 1A *Larson, Workmen's Compensation,* § 43.51 (1973). And (quoting *Larson*):

It follows that any workers whose services form a regular and continuing part of the cost of that product, and whose method of

operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channelled, [are] within the area of intended protection. [58 *N. J. Super.* at 603].

■■ There are a great variety of cases which deal with the question of whether an individual is an employee entitled to compensation benefits or an independent contractor who must provide his own protection. The courts have devised two tests for answering this question: the right to control test and the relative nature of the work test. Although the courts have lately placed greater reliance upon the latter test, *Rutherford v. Modern Transport Co., supra*, 128 *N. J. Super.* at 509, both tests are basically designed to draw a distinction between those occupations which are properly classified as separate enterprises and those which are in fact an integral part of the employer's regular business. See generally, *Ehehalt v. Livingston Bd. of Ed.*, 147 *N. J. Super.* 511, 512 (App. Div. 1977). Further, the control test is still a factor to be considered when reviewing a given relationship. *Marcus v. Eastern Agricultural Ass'n, Inc., supra*, 58 *N. J. Super.* at 597.

■■ Under the control test, the actual exercise of control is not as determinative as the *right* of control itself. *Mahoney v. Nitroform Co., Inc.*, 20 *N. J.* 499, 506 (1956). This is so because in many instances the expertise of an employee precludes an employer from giving him any effective direction concerning the method he selects in carrying out his duties. See *Berkeyheiser v. Woolf*, 71 *N. J. Super.* 171, 177 (App. Div. 1961). Thus, the element of control is largely left to inference. 1A *Larson, Workmen's Compensation* § 44.32 (1973). However, where the "employer" supplies expensive machinery, the inference of control can become quite strong. For example, in *Tofani v. Lo Biondo Brothers Motor Express, Inc.*, 83 *N. J. Super.* 480, 486–487 (App. Div.) aff'd o. b. 43 *N. J.* 494 (1964), the court observed:

The owner of a five thousand dollar truck who entrusts it to a driver is naturally going (to retain the right) to dictate details in order to protect his investment. Moreover, he will also want to ensure that it is kept as busy as possible. For these reasons, it is not surprising that there seems to be no case on record in which the employer owned the truck but the driver was held to be an independent contractor.

An example of the "control" test is found in *Piantanida v. Bennett*, 17 *N. J.* 291 (1955). There, the plaintiff, who operated a landscaping business with his own truck, tractor, etc., was engaged by a wrecking company to clear debris from a demolition site. He was shown what debris to cart off, where it should be loaded and when loading should take place. 17 *N. J.* at 294. "Here the defendant not only directed what should be done but in a large measure how it should be done * * *." *Id.* at 296. *Cf. Wilson v. Kelleher Motor Freight Lines, Inc.*, 12 *N. J.* 261, 264 (1953). Thus, the test for control entails an assessment of the employer's right to determine how a particular job should be performed.

In the case at bar respondent E.T.L. itself owned the tractor leased by Smith, thereby giving rise to the substantial inference of control noted by the court in *Tofani, supra.* Also, the fact of control *may* be (we do not say it is) established because (a) Chaim Mizrahi, an E.T.L. officer, testified at the hearing that we wanted to keep control because it's our equipment"; (b) lessee/drivers were required to call in after delivering outgoing loads; (c) Smith, at times, was required to permit other drivers to use his tractor; (d) E.T.L. attempted to compel its drivers to park their tractors in E.T.L.'s yard; (e) drivers were provided with E.T.L. credit cards for which, no doubt, they were accountable, and (f) the drivers may have accepted hauling contracts on behalf of E.T.L., as E.T.L. "agents," although the record is unclear on this point. The judge of compensation is to make findings and conclusions as to such factors.

The fact that E.T.L. did not dictate Smith's working hours or travel routes is not dispositive here. As Judge Conford noted in *Marcus, supra,* 58 *N. J. Super.* at 597:

Thus, the requirement of control is sufficiently met where its extent is commensurate with that degree of supervision which is necessary and appropriate, considering the type of work to be done and the capabilities of the particular person doing it.

In the hauling business, it is manifest that drivers are not on a 9 to 5 schedule. Rather, they work particular jobs and put in such hours as are required. Therefore, the failure of E.T.L. to specify working hours is not persuasive on this issue.

Besides these indicia of control, E. T. L. apparently could also require Smith to make certain deliveries, even though he may have solicited another job at the time. Again, the record is not fully developed in this area.

The second test devised to distinguish employees from independent contractors is the relative nature of the work test. Under this test the court will find that an employer-employee relationship exists if the petitioner shows "substantial economic dependence" upon the "employer" and demonstrates that there is a "functional integration" of their respective operations. *Caicco v. Toto Brothers, Inc.*, 62 *N. J.* 305, 310 (1973). As noted in *Rossnagle v. Capra and Shell Oil Co.*, 127 *N. J. Super.* 507, 517 (App. Div. 1973), aff'd o. b. 64 *N. J.* 549 (1974), "the court will inquire into whether the work done by the petitioner was an *integral part of the regular business of the respondent.* If such is found then the court will determine that an employment relationship existed." (Emphasis added). Thus, application of this test requires the court to undertake an examination of the "employer's" business.

In *Tofani v. Lo Biondo Brothers Motor Express, Inc.*, *supra*, petitioner's decedent himself owned the tractor which he leased to respondent and then drove in respondent's business. Decedent was required to call in after delivering an outgoing load to see if respondent had any return jobs. Billing was done by respondent and decedent received payment on the basis of tonnage and distance. The court held that peti-

tioner's decedent was an employee of respondent for the purposes of workers' compensation, and noted:

> For the period of time he placed himself under engagement to LoBiondo, Tofani was economically dependent on LoBiondo; he was not conducting a separate and independent business, at least during that period; and his work constituted an integral part of the regular and continuous functioning of the LoBiondo trucking enterprise. The "relative nature of the work test" for determination of the employment relationship for purposes of workmen's compensation is therefore here met, albeit not as strikingly as in the case of the chick-raiser involved in *Marcus v. Eastern Agricultural Ass'n, Inc.*, 32 *N. J.* 460 (1960), reversing on dissenting opinion in 58 *N. J. Super.* 584, 596, 603–604 (App. Div. 1959). See also *Hannigan v. Goldfarb*, 53 *N. J. Super.* 190, 206 (App. Div. 1958). [83 *N. J. Super.* at 493]

An "independent contractor" has been defined as follows:

> An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods and without being subject to the control of his employer as to the means by which the result is to be accomplished but only as to the result of the work. [*Wilson v. Kelleher Motor Freight Lines, Inc., supra,* 12 *N. J.* at 264].

Accord, *Berkeyheiser v. Woolf, supra* 71 *N. J. Super.,* at 176; *Cappadonna v. Passaic Motors, Inc.,* 136 *N. J. L.* 299, 300 (Sup. Ct. 1947), aff'd 137 *N. J. L.* 661 (E. & A. 1948); *Errickson v. Schwiers Co.,* 108 *N. J. L.* 481, 483 (E. & A. 1931).

 On remand the judge of compensation is to determine whether Smith was entirely dependent upon E.T.L. for hauling jobs and what proportion of his income was derived from the leads provided by E.T.L. In this respect, the "substantial economic dependence" requirement may be met. As we understand it, E.T.L. provided its drivers with credit cards to meet expenses. Did Smith have the right to reject the leads provided by E.T.L.? See *Hannigan v. Goldfarb, supra,* 53 *N. J. Super.* at 205.

 In sum, we direct the judge of compensation on remand to make such findings of fact as may be relevant to

354

the foregoing principles of law. In addition, he shall include in such findings the answers to the following: (a) can E.T.L. require Smith to permit other drivers to use his tractor; (b) how far was Smith allowed to develop independent contracts with shippers; (c) was the list of shippers and brokers provided by E.T.L.; (d) could E.T.L. require Smith to accept one hauling job over another; (e) what was the origin of E.T.L.'s business; (f) was Smith required to generate a given amount of work over a period of time, and (g) what type of negotiations preceded the lease agreement with E.T.L. and Indiana Refrigerator Lines, Inc.?

The judgment is reversed and the matter is remanded to the Compensation Division for proceedings in accordance with the views herein expressed. If the judge deems it appropriate, he may reopen the hearing for further proofs. The findings and conclusions of the judge of compensation shall be filed with the clerk of this court by April 1, 1978 and served on the attorneys for petitioner and respondent. The parties shall each file letter memoranda with the judges of Part A of the Appellate Division by May 1, 1978.

We retain jurisdiction.