294 N.J. Super. 643 (1996)
684 A.2d 104
NORMAN STEVENS, PETITIONER-RESPONDENT,
v.
BOARD OF TRUSTEES OF THE PUBLIC EMPLOYEES' RETIREMENT SYSTEM, RESPONDENT-RESPONDENT, THE TOWNSHIP OF BRIDGEWATER, INTERVENOR-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 1996.
Decided November 13, 1996.
*646 Before Judges MUIR, Jr., KLEINER and COBURN.
William W. Lanigan argued the cause for intervenor-appellant (Law Offices of William W. Lanigan; Mr. Lanigan, on the brief).
Christine Roy, Deputy Attorney General, argued the cause for respondent, Board of Trustees of the Public Employees' Retirement System (Peter Verniero, Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Roy, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
We have consolidated two separate appeals from a decision of the Board of Trustees of the Public Employees' Retirement System (P.E.R.S.). The Board of Trustees rejected the recommended decision of an administrative law judge (ALJ) and concluded that petitioner Norman Stevens was not entitled to the retirement pension benefits paid to him for the period between January 1, 1993, and January 31, 1994. The Board's conclusion also required the Township of Bridgewater, an intervenor in the administrative proceedings, to contribute to P.E.R.S. for the same period. The ALJ had concluded that Stevens was an independent contractor during that period and, as such, was not required to participate in P.E.R.S. The ALJ's decision implicitly concluded that the municipality had no duty to contribute to P.E.R.S. during the period that Stevens provided services in his capacity as an independent contractor. In reaching its decision to reject the *647 recommendation of the ALJ, the Board was required to interpret and apply N.J.S.A. 43:15A-57.2 as it pertains to a former employee who claims independent contractor status. We conclude that the Board failed to perform its function by not articulating precise findings of fact and then applying those facts to the pertinent statute. Without specific fact-finding, it is impossible to determine whether the Board's statutory interpretation is reasonable. We reverse and remand to the Board.

I
The facts in this matter are not in dispute nor were they disputed when presented to the ALJ. The interpretation of those facts, however, was substantially debated.
Stevens, who was born December 29, 1931, became the tax assessor for the Township of Bridgewater on September 1, 1974, and was immediately enrolled in P.E.R.S. Stevens retired from that position on July 1, 1992, and began to receive $1,654.43 per month as his retirement benefit. On July 2, 1992, Michael Hedden, MAI, was appointed as Bridgewater's new tax assessor.
Subsequently, Bridgewater concluded that Hedden needed assistance in performing the duties of tax assessor. Another employee in the tax assessor's office who had been expected to provide the necessary assistance was injured and was unavailable to help the new assessor. The Bridgewater Township Council adopted a resolution authorizing the mayor and township clerk to execute a "Professional Services' Agreement" with Stevens in accordance with N.J.S.A. 40A:11-5(1)(a)(i), to provide support services for the Tax Assessor's office. Pursuant to the resolution, Stevens and Bridgewater entered into a one-year professional services agreement on January 8, 1993. The term of the contract was from January 1, 1993, to December 31, 1993. Under the terms of the contract, Stevens would be paid $2,500 per month  $30,000 per year  and would "provide support services on an `as needed' basis to the Township Assessor." The funds used to pay Stevens were not payable under the salary and wage ordinance. *648 Nor was Stevens' salary paid out of the salaries and wages of the assessor's department. Stevens' salary was paid out of Bridgewater's township budget as "contingent." The contract clearly delineated that Stevens would receive no fringe benefits from Bridgewater and that he would not maintain regular hours but would provide services upon request of the tax assessor or other Bridgewater officials. At the end of 1993, Stevens received an Internal Revenue Form 1099 reflecting the fee paid to him under the contract.
On November 24, 1993, Marcia Sudano, the president of the Somerset County Assessors' Association, sent a letter to Nunzio Masone, in the Overview and Scrutiny Department of the New Jersey Division of Pensions and Benefits (Division), alerting the Division that Stevens was both collecting a pension and working in the Assessor's office in Bridgewater.
As a result of this letter, the Division conducted an investigation and, on January 5, 1994, determined that:
Norman Stevens is retired from P.E.R.S., however, he is working for Bridgewater Township as a support person [sic] the Township Assessor at $30,000 per year. Prior to his retirement, Norman Stevens was the Township Assessor. Other than the fact he was paid by voucher it would appear that he is still an employee of Bridgewater Township.
The Board of Trustees of P.E.R.S. (Board) at its January 19, 1994, meeting decided that Stevens had to re-enroll in P.E.R.S. effective January 1, 1993, the starting date of the personal services contract. The minutes of the meeting reflect that:
The Board based its decision upon the provisions of N.J.S.A. 43:15A-57.2 that stipulates that a member, who is reemployed in a permanent position in public employment after retiring from P.E.R.S., cannot receive a retirement benefit for the period of time they are employed. Therefore, the Board voted to cancel Mr. Stevens' retirement benefit effective January 1, 1993, retirement check dated February 1, 1993.
Stevens was notified of the Board's decision in a letter dated January 27, 1994. The letter informed Stevens that his retirement benefits were being canceled retroactively and that he would have to reimburse P.E.R.S. for the benefits that he had received. The letter also informed Stevens that he would have to pay into *649 the pension system for the year that he worked under the personal services contract.
Stevens resigned January 31, 1994, and requested a hearing before an ALJ to contest the Board's decision. On May 6, 1994, the Division notified Stevens that he owed P.E.R.S. $23,162.02.
On September 28, 1994, the ALJ conducted a pre-hearing conference and concluded that the burden of proof would be placed on the Board as to the validity of the termination of Mr. Stevens' pension. By rejecting in its entirety the recommendation of the ALJ, it would appear that the Board also rejected the pre-hearing decision which placed the burden of proof on the Board. The terse decision of the Board, more fully discussed hereafter, does not clearly indicate that the ALJ's allocation of the burden of proof was deemed incorrect by the Board.
On November 4, 1994, Bridgewater successfully filed a motion to intervene, contending that, in the event that the Board's position were sustained, it would be liable to P.E.R.S. for not having made the proper deductions from Stevens' salary.
At the ensuing hearing before the ALJ, Stevens testified that he worked in the assessor's office approximately eight hours per week limiting his work time to four afternoons each week. His mornings were devoted to developing a private consulting business. Stevens indicated that, although he performed his services within the assessor's office and occasionally used the assessor's computer, he was not assigned his own desk. He also indicated that he received "filing" assistance from other employees within the assessor's office. Although he considered Hedden to be his "boss," he indicated that he merely advised Hedden with respect to appraisals and assessments and performed various tasks in an effort to assist Hedden but did not perform appraisal inspections nor did he participate in tax appeals. Stevens' testimony was corroborated by Hedden.
The ALJ, on July 7, 1993, recommended that Stevens be considered an independent contractor and that the Board reverse *650 its original decision. The ALJ, relying upon Smith v. E.T.L. Enterprises, 155 N.J. Super. 343, 382 A.2d 939 (App.Div. 1978), noted that two tests are used to distinguish "employees" from "independent contractors," the "right to control test" and the "relative nature of the work test," ibid., and concluded that Stevens was an independent contractor.
In response to the ALJ's recommendation, the Deputy Attorney General, who had represented the Board at the ALJ proceedings, filed exceptions. Those exceptions incorporated by reference a trial brief written by the Deputy Attorney General which had been submitted to the ALJ. Specifically, the Deputy Attorney General argued that, in applying the "right to control test," the ALJ should consider the same factors used generally by the Internal Revenue Service. The ALJ specifically rejected that argument and concluded, in part:
First, as to control, he had the right and the freedom to exercise control over his consulting. It was his expertise that The Township and Mr. Hedden sought, not the reverse. Petitioner may have acquiesced to set hours, but his contract specified mutual agreement. Despite the State's contrary argument, supervision was not a consideration. Petitioner was there to "guide" Mr. Hedden, who needed him to understand the function of Township Assessor. Petitioner undertook the support tasks for which he contracted in his own time, and his own way. His use of Township equipment was de minimis.

On August 16, 1993, the Board formally rejected the ALJ's recommendation that Stevens was an independent contractor and reaffirmed its earlier determination that Stevens was an employee of Bridgewater, effective January 1, 1993, and was thus liable for re-payment of all pension benefits paid between January 1, 1993, and January 31, 1994. In its "FINDINGS OF FACT AND CONCLUSIONS OF LAW," the Board stated:
Respondent Board accepts and incorporates herein the factual and legal discussion of the Deputy Attorney General in the enclosed exceptions letter dated July 20, 1995, and to the extent that this discussion is in conflict with that of the ALJ in the initial decision, rejects the factual and legal discussion set forth in the Initial Decision.

II
N.J.S.A. 43:15A-57.2 provides:

*651 If a former member of the State Employees' Retirement System or the retirement system, who has been granted a retirement allowance for any cause other than disability, becomes employed again in a position which makes him eligible to be a member of the retirement system, his retirement allowance and the right to any death benefit as a result of his former membership, shall be canceled until he again retires.
Such person shall be re-enrolled in the retirement system and shall contribute thereto at a rate based on his age at the time of re-enrollment. Such person shall be treated as an active member for determining disability or death benefits while in service and no benefits pursuant to an optional selection with respect to his former membership shall be paid if his death shall occur during the period of such re-enrollment.
Upon subsequent retirement of such member, his former retirement allowance shall be reinstated together with any optional selection, based on his former membership. In addition, he shall receive an additional retirement allowance based on his subsequent service as a member computed in accordance with applicable provisions of [N.J.S.A. 43:15A-1 et seq.]; provided, however, that his total retirement allowance upon such subsequent retirement shall not be a greater proportion of his final compensation than the proportion to which he would have been entitled had he remained in service during the period of his prior retirement. Any death benefit to which such member shall be eligible shall be based on his latest retirement, but shall not be less than the death benefit that was applicable to his former retirement.
[N.J.S.A. 43:15A-57.2 (emphasis added).]
As a general rule, when an administrative agency makes a finding of fact, we will not disturb that decision unless the finding is not supported by substantial credible evidence. Gerba v. Board of Trustees, 83 N.J. 174, 189, 416 A.2d 314 (1980); Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980); Atkinson v. Parsekian, 37 N.J. 143, 149, 179 A.2d 732 (1962). As noted by the Supreme Court in Henry, "an appellate court will reverse the decision of the administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry, supra, 81 N.J. at 579-80, 410 A.2d 686 (emphasis added). While this is a high standard of review, it does not render the appellate process meaningless:
[I]f the appellate tribunal is thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction then, and only then, it should appraise the record as if it were deciding the matter at inception and make its own findings and conclusions.
[State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964) (citations omitted).]
*652 Generally, where a Board's decision is predicated on its interpretation of a statute, our deference to the Board is not as compelling. See Mayflower Sec. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973). We will, however, give great deference to an administrative agency which is interpreting the very statute that the agency was created to enforce. Merin v. Maglaki, 126 N.J. 430, 436-37, 599 A.2d 1256 (1992) ("[w]e give substantial deference to the interpretation of the agency charged with enforcing an act. The agency's interpretation will prevail provided it is not plainly unreasonable"); Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984) ("the agency's interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable"). Accordingly, in this case, we recognize that the Board is charged with the general responsibility for the operation of P.E.R.S., and its administrative interpretation of N.J.S.A. 43:15A-57.2 is entitled to great weight. See Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. Here, if the Board had made its own independent findings of fact and conclusions of law, to reverse that decision we would have had to conclude that the Board's interpretation of N.J.S.A. 43:15A-57.2 was plainly unreasonable. Because the Board failed to articulate any findings of fact whatsoever and failed to apply those facts, as found, to the pertinent statute, we are compelled to reverse.

III
In an effort to convince the ALJ that Stevens, although denominated an "independent contractor," was in reality an "employee," the Deputy Attorney General representing the Board urged the ALJ to consider those factors utilized by the Internal Revenue Service with particular emphasis on Revenue Ruling 87-41, 1987-1 C.B. 296. The Internal Revenue Service utilizes a 20-factor test *653 to determine whether sufficient control is present to establish an employer-employee relationship.[1]
The ALJ rejected that argument concluding that to consider those factors would violate provisions in the New Jersey Administrative Procedure Act, N.J.S.A. 52:14B-3 to -7, as it would endorse a standard without publication of notice and adoption in the New Jersey Register and would impose upon Stevens a standard unknown to him prior to his retirement.
We need not determine if the ALJ correctly rejected the argument of the Deputy Attorney General. Our sole responsibility is to evaluate whether the Board reasonably interpreted N.J.S.A. 43:15A-57.2. Our appellate function, however, is frustrated by the absence of specific findings of fact by the Board and the absence of specific conclusions of law. As noted, the only findings of the Board are encompassed in one paragraph:
Respondent Board accepts and incorporates herein the factual and legal discussion of the Deputy Attorney General in the enclosed exceptions letter dated July 20, 1995, and to the extent that this discussion is in conflict with that of the ALJ in the initial decision, rejects the factual and legal discussion set forth in the Initial Decision.
As we read the Board's terse decision, it has adopted all of the "findings of fact" and "conclusions of law" that were argued by its own counsel and has rejected any conflicting conclusion of the ALJ. The Board thus places the onus on this court to scrutinize each element in the Deputy Attorney General's exception letter (and, as incorporated by reference, the Deputy Attorney General's brief) and to explain why each exception is a valid critique of the ALJ's analysis. We refuse to accept that responsibility.
*654 Under the Administrative Procedure Act, N.J.S.A. 52:14B, a final decision adverse to a party must meet certain criteria. Specifically:
A final decision or order adverse to a party in a contested case shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated and shall be based only upon the evidence of record at the hearing, as such evidence may be established by rules of evidence and procedure promulgated by the director.
Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. The final decision may incorporate by reference any or all of the recommendations of the administrative law judge. Parties shall be notified either personally or by mail of any decision or order. Upon request a copy of the decision or order shall be delivered or mailed forthwith by registered or certified mail to each party and to his attorney of record.
[N.J.S.A. 52:14B-10(d).]
While it is in the discretion of the agency to incorporate "by reference any or all of the recommendations of the administrative law judge," ibid., the agency is not statutorily invested with authority to adopt the findings of fact and conclusions of law of the Deputy Attorney General who presented the case as an advocate on behalf of the Board.
We find it interesting that Smith v. E.T.L. Enterprises, 155 N.J. Super. 343, 382 A.2d 939 (App.Div. 1978), which was cited by the ALJ as dispositive of the distinctions between employee and independent contractor in cases before the Division of Workers' Compensation, was also a decision which reversed the judge of compensation for inadequate findings of fact and conclusions of law. Id. at 348, 382 A.2d 939. In reversing and remanding for further findings we noted:
In Application of Howard Savings of Newark, 32 N.J. 29, 159 A.2d 113 (1960), the Supreme Court said:
It is axiomatic in this State by this time that an administrative agency acting quasi-judicially must set forth basic findings of fact, supported by the evidence and supporting the ultimate conclusions and final determinations, for the salutary purpose of informing the interested parties and any reviewing tribunal of the basis on which the final decision was reached so that it may be readily determined whether the result is sufficiently and soundly grounded or derives from arbitrary, capricious or extra-legal considerations.
[Smith, supra, 155 N.J. Super. at 348, 382 A.2d 939.]
*655 In DiMaria v. Board of Trustees of P.E.R.S., 225 N.J. Super. 341, 542 A.2d 498 (App.Div.), certif. denied, 113 N.J. 638, 552 A.2d 164 (1988), we stated that "[w]hen an administrative agency's decision is not accompanied by the requisite findings of fact and conclusions of law, the usual remedy is to remand the matter to the agency to correct this deficiency." Id. at 347, 542 A.2d 498 (citing Perez v. Pantasote, Inc., 95 N.J. 105, 118-20, 469 A.2d 22 (1984); Kotlarich v. Ramsey, 51 N.J. Super. 520, 543, 144 A.2d 279 (App.Div. 1958)). We find that the Board's adoption of the Deputy Attorney General's letter of exceptions, which itself adopts the adversarial brief submitted by the same Deputy Attorney General to the ALJ, does not constitute adequate and independent findings of fact and conclusions of law.
We accordingly reverse the Board's decision and remand for further findings of fact and conclusions of law. We do not retain jurisdiction.
NOTES
[1] The "control" factors include: (1) instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month; (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; (20) right to terminate. Id. at 87:78 to 87:80.