NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4379-14T1

IN THE MATTER OF THE SADC
RESOLUTION FY2015R12(2).

 Argued April 5, 2017 – Decided May 16, 2017

 Before Judges Alvarez, Manahan, and Lisa.

 On appeal from the resolution by the New
 Jersey State Agriculture Development
 Committee, Resolution No. FY2015R12(2).

 Daniel L. Schmutter argued the cause for
 appellants Max Henry Riewerts and Diane
 Tribble Riewerts (Hartman & Winnicki, P.C.,
 attorneys; Mr. Schmutter, on the briefs).

 Jason Thomas Stypinski, Deputy Attorney
 General, argued the cause for respondent State
 Agriculture Development Committee (Christopher
 S. Porrino, Attorney General, attorney;
 Melissa H. Raksa, Assistant Attorney General,
 of counsel; Mr. Stypinski, on the brief).

PER CURIAM

 Since 2012, appellants Max Henry Riewerts and Diane Tribble

Riewerts have been attempting to obtain the necessary approvals,

municipal and state, in order to relocate a right-of-way (ROW) in

which they have an interest by recorded easement deed. After the
initial denial by the agency director of the State Agriculture

Development Committee (SADC or Committee) on October 26, 2012,

appellants sought formal approval from the Committee. The

Committee denied them permission to reconfigure and move the ROW,1

which decision was memorialized in Resolution FY2015R12(2). Their

request was finally denied on December 11, 2014, and on February

26, 2015, by resolution, FY2015R12(5), SADC denied their request

for reconsideration. This appeal followed.

 Appellants contend the record supports outright reversal.

They assert that the decision was based on SADC staff net opinions

that resulted in arbitrary, unreasonable, and capricious action

by the agency. The SADC argues to the contrary, that its decision

was based on a proper assessment of facts and law, and should be

affirmed.

 The record consists of transcripts of appellants'

presentation, made during multiple appearances before the

Committee, as well as exhibits such as the easement deeds. After

our consideration of the record and the relevant law, we conclude

that it does not allow for meaningful review. Since no formal

hearing was conducted affording the parties the opportunity to

1
 This denial was actually sent to the owner of the servient
property over which the easement crosses and forwarded to
appellants on December 17, 2012.

 2 A-4379-14T1
fully explore the legal and factual issues, we now vacate the

denial and remand the matter for that purpose.

 By way of background, in March 2009, appellants acquired a

fifty-six-acre parcel known as Greenwich Township Block 44, Lot

24. They reside on the property and lease a portion of the

landlocked parcel for farming purposes. Access to the nearest

public road is over a ROW created in 1951 by recorded easement

deed. It does not include a metes and bounds description, rather

it describes the location as follows:

 There is conveyed to second party a right of
 way over an existing roadway leading from the
 Bloomsbury-Warren Glen Road through the
 property of first party to the property
 hereinabove conveyed consisting of
 approximately fifteen feet in width.

 On July 23, 2010, after appellants acquired their tract, the

then owner of the adjoining lot, over which the easement extends,

Block 44, Lot 5, conveyed by deed of easement to the State of New

Jersey, and the United States, all non-agricultural development

rights to that tract. The parcel is similar in size to appellants'

property. This conveyance was made under the Agricultural

Retention and Development Act (ARDA), N.J.S.A. 4:1C-11 to -48.

ARDA authorized the SADC, an agency created under the Right to

Farm Act, N.J.S.A. 4:1C-1 to -10, to enter into agreements with

farmland owners for the acquisition of development rights in order

 3 A-4379-14T1
to keep land in agricultural production. N.J.S.A. 4:1C-15 to -

21.

 The deed further states that the United States, "acting

through the United States Department of Agriculture, Natural

Resources Conservation Service (NRCS)" funded the purchase. The

funds for the acquisition were allocated to the Warren County

Board of Chosen Freeholders by the Board of Trustees of the New

Jersey Conservation Foundation for that purpose.

 Attached to the 2010 farm preservation easement deed is a

schedule including a metes and bounds description of the property

and the following language: "Subject to a Right of Way for access

to Block 44 Lot 24 containing 0.423 acres. Said Right of Way

being approximately 15-feet wide as recited in Deed Book 351 page

139, Deed Book 373 page 273 and Deed Book 421 page 490." The deed

further discloses an ROW belonging to Lot 5 over appellants' lot,

"for Certain Water Rights benefitting Block 44 Lot 5." The ROW

over Lot 24 was memorialized years prior in a recorded deed.

 Lot 5 is currently owned by Robert Santini. Although he

supports appellants' proposal, he did not make the application

himself nor was he involved in any presentation to the SADC.

Committee members, for reasons not stated on the record, suggested

he should have been involved in the application.

 4 A-4379-14T1
 Despite the existence of the two recorded deeds regarding

ROWs having been described in the farmland deed, it appears no

notice of the conveyance of development rights was provided to

appellants. They were unaware of the change in Lot 5's status

until they approached the municipality to obtain the necessary

approvals or permits to reconfigure their ROW.

 Appellants' ROW includes two ninety-degree turns around a

railroad embankment on the southerly end of the driveway, which

are difficult to negotiate with farm equipment. They contend that

in addition, the ROW is impacted by runoff from the County road

and from Lot 5, as well as flooding and erosion.

 Appellants submitted an engineer's report and sketch in

support of their proposed alternative ROW, basically a straight

line drawn from the County road across Lot 5 to their lot on the

southerly end. The local fire chief wrote a letter that appellants

presented to the SADC, confirming that a fire truck would have

difficulty negotiating the two ninety-degree turns to reach Lot

24 from the County road. Appellants represented that entry onto

the County road from Lot 24 is dangerous in the summer, when corn

grown on Lot 5 attains its full height, as visibility becomes

virtually non-existent.

 Appellants' proposed reconfiguration, identified by all

parties as Alternative 1, placed the entry point on the County

 5 A-4379-14T1
road further to the east at an angle with the road. Throughout

the meetings, the Committee acknowledged that appellants' safety

concerns were legitimate. No formal expert report or testimony

was presented other than appellants' engineering report and plan

depicting Alternative 1.

 The SADC staff rejected Alternative 1 and came up with their

own proposal, known as Alternative 2. The Committee followed the

"staff recommendations" included in their meeting packets. They

are not included in the appendices on appeal, and we cannot discern

if appellants had access to them during their several appearances

before the Committee. Alternative 2 essentially tracked the

present driveway, except it somewhat eased the turns at the end

of the ROW.

 Based on SADC staff recommendations, the NRCS in writing also

rejected Alternative 1 but consented to Alternative 2. When

appellants realized they had not been given a copy of that letter,

one was provided, and they were invited to present any new

information at the next meeting. Because in the opinion of the

SADC, appellants did not provide any new information in response

to the NRCS letter, the application was again rejected.

 A consequential and disputed point was the issue of whether

the reconfiguration of the ROW would result in the loss of

farmland. Appellants contended that removal of the blacktop

 6 A-4379-14T1
extending over the present ROW, and remediation of the soil

beneath, would lead to its eventual reclamation for farmland

purposes. Appellants pointed out that, based on materials posted

on a government internet website, such reclamation of impacted

soil could occur within one to two years of the removal of the

asphalt after deep plowing.

 The SADC took the position that Alternative 1 would result

in the loss of farmland both because of the additional ground

consumed by a new ROW, and the nonarable area that would be left

by the removal of the blacktop extending over the old ROW.

Appellants unsuccessfully argued that the change would lead to

more, not less, available farmland since they contended that

Alternative 1 actually covered slightly less square footage than

the present ROW, and the land beneath the ROW blacktop could be

remediated for agricultural purposes.

 The resolution contained the following findings:

 1. The proposal does not constitute an
 agricultural use or serve an agricultural
 purpose but [] instead constitutes development
 of the [p]remises for the nonagricultural
 purpose of improved access to an adjacent
 residential property; []
 2. The purpose would be detrimental to
 drainage, flood control, erosion control, and
 soil conservation as a result of steeper
 slopes and the potential for more runoff and
 erosion; []
 3. The proposal, as described in the
 [e]ngineering [r]port and [addendum], would be

 7 A-4379-14T1
 detrimental to the continued agricultural use
 of the [p]remises by taking more prime
 farmland out of production than the existing
 [ROW,] . . . additional land will be removed
 from crop production[,] . . . [the proposal]
 will reduce the size of the fields, increase
 field edge and attendant crop loss to
 wildlife; []
 4. [The addendum's] design . . . would require
 easements of 45 feet in width where the
 current roadway total 15 feet in width . . .;
 []
 5. Conveyance of an additional easement
 greater than the existing 15 foot wide
 easement . . . would be a violation of the
 Deed of Easement; and
 6. As described in the November 17, 2014,
 letter from the NRCS, . . . [alternative] 1
 is in conflict with [the] Deed of Easement
 . . . and therefore the request is denied by
 that agency.

 Additionally, Alternative 2 was approved for the following

reasons:

 1. The proposal constitutes an agricultural
 use and serves agricultural and conservation
 purposes by addressing existing drainage,
 erosion control, and soil conservation . . . .
 Specifically, drainage and erosion control
 concerns . . . could be addressed in the
 triangle of land between the old alignment and
 the new alignment through the installation of
 various NRCS conservation practices . . . ;
 []
 2. The proposal reduces impervious cover
 . . . and does not impact any prime farmland;
 and
 3. The proposal is not in conflict [with any]
 Deed of Easement restrictions inherent to
 farms preserved with funding from NRCS through
 [Farms and Ranch Lands Protection Program] as
 confirmed by the NRCS on November 17, 2014
 . . . .

 8 A-4379-14T1
 On appeal, appellants raise the following points of error:

 ALL OF THE EVIDENCE IN THE RECORD SUPPORTS
 APPELLANTS' APPLICATION, AND THUS THE DECISION
 BELOW SHOULD BE REVERSED WITH DIRECTIONS TO
 ENTER A DECISION GRANTING THE APPLICATION.

 A. SADC's Determination was Arbitrary and
 Capricious and not Supported by
 Substantial Credible Evidence.

 B. This Court Has Authority to Provide
 Relief as to the Driveway Easement.

 Appellate courts have a "limited role" in reviewing

administrative agency decisions. In re Stallworth, 208 N.J. 182,

194 (2011). An agency's judgment may only be reversed if it was

"arbitrary, capricious, [] unreasonable, or [] not supported by

substantial credible evidence in the record as a whole." Ibid.

(quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

Moreover, "courts typically defer to the expertise of agencies in

technical matters which lie within their special competence" and

"give deference to agencies' construction of the statutory schemes

they are entrusted to administer." Pasquince v. Brighton Arms

Apartments, 378 N.J. Super. 588, 597 (App. Div. 2005) (citations

omitted).

 In order to review such decisions, however, in light of the

deference ordinarily accorded to an agency, we must be presented

with an adequate record. See Stevens v. Bd. of Trs., 294 N.J.

Super. 643, 655 (App. Div. 1996) (citation omitted) ("When an

 9 A-4379-14T1
administrative agency's decision is not accompanied by the

requisite findings of fact and conclusions of law, the usual remedy

is to remand the matter to the agency to correct this

deficiency.").

 The record does not support appellants' position that a

reversal of the agency decision is warranted. We lack important

information necessary to fairly accomplish our deferential review.

Appellants had no opportunity to present evidence except very

informally, nor were they able to cross-examine SADC staff. We

do not have the reports the Committee relied upon, nor the

credentials and areas of expertise of the SADC personnel whose

recommendations and opinions appear to have been adopted. Thus

we cannot determine whether SADC's exercise of discretion in

rejecting appellants' engineer's report was reasonable.

 It is undisputed that "[d]ue process does not always require

an administrative agency to hold an evidentiary hearing before it

goes about the business it was created to conduct." In re Request

for Solid Waste Util. Customer Lists, 106 N.J. 508, 520 (1987).

This is because "[t]he power to supervise and investigate a

regulated industry could be undermined if a regulator were required

to provide the industry with the right to produce witnesses and

cross-examine staff members before the agency could act." Id. at

520-21. "Sometimes nothing more is required than notice and the

 10 A-4379-14T1
opportunity to present reasons, either orally or in writing, why

the proposed action should not be taken." Id. at 521.

 In High Horizon Development Co. v. Department of

Transportation, 120 N.J. 40, 42 (1990), the Court addressed the

question of when administrative agencies were required to conduct

trial-type hearings. The key issue is "whether the agency is

acting in a judicial or quasi-judicial capacity or in a legislative

capacity." Id. at 50.

 If the [agency] is exercising "policy or
 discretion" with respect to [the issues], a
 clear requirement for a trial-type hearing is
 not present. On the other hand, if the
 questions turn on expert opinion relied on by
 the agency, one must be able in some way to
 contest the bases of the opinion.

 [Id. at 51.]

Additionally, trial-type hearings may be required when the agency

must resolve factual issues. Ibid. Because in this case the SADC

was acting upon an application brought by a third party

significantly affecting that party's rights, it was acting in a

"judicial or quasi-judicial capacity[.]" See id. at 50.

 In this case, the agency made some assumptions regarding the

law in rendering their decision, such as that the failure to notify

appellants of the farm preservation deed was legally

inconsequential. Similarly, the Committee assumed Lot 5's change

in use, which precludes appellants from modifying their pre-

 11 A-4379-14T1
existing ROW, was not compensable. The Committee also assumed

appellants can be bound by the conditions limiting the use of Lot

5 when they never agreed to those restrictions. These assumptions

may all be correct, and we express no opinion regarding them, but

they warrant some consideration by the Committee.

 Additionally, Alternative 2 did not significantly modify the

ROW. From the record available to us, safety and other concerns

were unaffected. A more complete exploration of potential

consequences such as runoff, soil erosion, and the restoration of

land for agricultural purposes is necessary. The questions

"turn[ed] on expert opinion relied on by the agency," and without

a hearing, appellants, third parties previously unconnected to the

SADC, could not have successfully "contest[ed] the bases of the

opinion." See id. at 51.

 Paragraphs 2, 4, and 5 purport to make factual findings

regarding conditions such as flood control, the width of the

proposed roadway as opposed to the current roadway, and changes

to the width of the easement, which were in stark contrast to the

information appellants presented, or were not in the record

provided on appeal. Paragraph 3 of the Resolution indicates that

Alternative 1 would decrease the amount of prime farmland available

for production, while appellants argued that the agricultural use

of both properties would be enhanced by the reclamation of the

 12 A-4379-14T1
present ROW and improvement of drainage, flood control, erosion

conditions, and soil conservation resulting from Alternative 1.

We do not have a basis for passing on the reasonableness of those

conclusions. Finally, although the NRCS denied the application,

a factor the SADC took into consideration, that refusal appears

to be solely in response to communications from the SADC.

 Thus, a remand is necessary because the record does not allow

for fair review, appellants were not afforded the process due

them, and significant legal and factual questions were not

addressed by the proceedings before the resolution was adopted.

The denial of appellants' application is therefore vacated, and

the matter remanded for hearing. We do not retain jurisdiction.

 Remanded for a hearing.

 13 A-4379-14T1