**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1319-22

IN THE MATTER OF
BOROUGH OF CARTERET,

     Petitioner-Appellant,

and

LOCAL 67, FIREFIGHTERS
MUTUAL BENEVOLENT
ASSOCIATION,

     Respondent-Respondent.

_____

NEW JERSEY PUBLIC
EMPLOYMENT RELATIONS
COMMISSION,

     Respondent.

_____

Argued April 10, 2024 – Decided April 25, 2024

Before Judges Firko and Susswein.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. CU-2019-020.

Thaddeus John Del Guercio argued the cause for appellant (McManimon, Scotland & Bauman, LLC, attorneys; Thaddeus John Del Guercio, of counsel and on the briefs).

Raymond George Heineman, Jr., argued the cause for respondent Local 67, Firefighters Mutual Benevolent Association (Kroll, Heineman, Ptasiewicz & Parsons, attorneys; Raymond George Heineman, Jr., of counsel and on the brief).

John Andrew Boppert, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine R. Lucarelli, General Counsel, attorney; John Andrew Boppert, on the brief).

PER CURIAM

Petitioner Borough of Carteret (Borough) appeals from a November 22, 2022 final agency decision of the Public Employment Relations Commission (PERC) denying the Borough's clarification of unit (CU) petition to exclude lieutenants from Firefighters Mutual Benevolent Association, Local 67 (Local 67), a collective bargaining unit that also represents rank-and-file members of the Borough's fire department. Reversing the decision of its Director of Representation (Director), the PERC Board concluded there was no actual or potential conflict of interest as to require severing a combined unit that has been in existence since 1965. After carefully reviewing the record in light of the governing legal principles and arguments of the parties, we affirm.

A-1319-22

I.

We discern the following pertinent facts and procedural history from the record. The Borough is a civil service municipality. Since the 1960s, Local 67 has represented both superior officers and rank-and-file firefighters. In December 2012, the Borough adopted an ordinance creating the title of lieutenant. Lieutenants were permitted to join Local 67.

The Carteret Fire Department consists of one fire chief, five lieutenants, and fourteen firefighters. There are no captains. The chief and lieutenants have managerial duties. Lieutenants report to the chief.

In 2015, the Borough filed a CU petition to require the creation of a new bargaining unit for lieutenants and captains on the grounds that separate bargaining units would prevent conflicts during contract negotiations. In February 2015, the Borough and Local 67 held an initial conference with a PERC representative. On May 13, 2015, the State approved the creation of the new union. Counsel for Local 67, Craig Gumpel, advised the Borough that creation of the new unit would have to be put to Local 67's delegates for approval.

In a May 2015 email, Gumpel advised that the New Jersey Firefighters Mutual Benevolent Association approved the creation of Local 267 for rank-

and-file firefighters. But Gumpel also noted he had not received confirmation Local 67 had addressed the issue. Local 67 President Jason Kurdyla later attested that Local 67 did not approve the agreement to sever the unit or to change its structure.

In a June 2, 2015 email, PERC advised the Borough that the new unit "would not need to sign a [C]amden [A]ffidavit if the [t]own was going to voluntarily recognize the new unit and the parties did not need to go through PERC" to complete the severance.[1] On June 22, 2015, the Borough's attorney received another email from PERC stating that if the Borough was going to voluntarily recognize the new unit, it should withdraw its 2015 CU petition. The record reflects that the severance agreement was never implemented.

On September 11, 2018, the Borough and Local 67 commenced negotiations for a new collective negotiations agreement.[2] On December 14, 2018—at the third contract negotiations meeting—the Borough raised the issue that captains and lieutenants should be severed from Local 67. At the final

---

[1] See City of Camden, P.E.R.C. No. 82-89, 8 N.J.P.E.R. 226 (¶ 13094 1982) (identifying and outlining an organization's responsibility to create a separate organizational structure to represent supervisors).

[2] The exiting collective negotiations agreement was effective from January 1, 2011, through December 31, 2015, but was to remain effective until a new agreement was signed.

contract negotiation meeting on January 14, 2019, the Borough announced they would not bargain with representatives of both groups in the room. Both parties filed unfair practice charges.[3] On March 25, 2019, PERC directed the Borough to file a new CU petition.

On April 11, 2019, the Civil Service Commission (CSC) conducted an audit of lieutenant job duties. The CSC audit found that a lieutenant "makes recommendations but does not have the authority to hire and fire personnel, prepare performance evaluations, or implement disciplinary action." The audit also found that lieutenants "report directly to the [f]ire [c]hief and provide limited [first] level supervision to [f]ire [f]ighters." In its October 29, 2019 final administrative action, the CSC found lieutenants in the Borough were "not performing necessary and daily supervisory duties."

PERC initiated an administrative investigation regarding the 2019 CU petition pursuant to N.J.A.C 19:11-2.2. As part of that investigation, on June 26, 2020, PERC requested answers in the form of sworn affidavits from the Borough and Local 67. The Borough submitted an affidavit of Chief Mark Hruska. Local 67 submitted affidavits from Local 67 President Kurdyla and

---

[3] PERC has held those charges in abeyance pending resolution of the severance issue.

Lieutenant Nathaniel Reynolds. The Director did not convene an evidentiary hearing.

On August 1, 2022, the Director issued his decision, granting the 2019 CU petition "to exclude lieutenants from the negotiations unit of lieutenants and firefighters represented by Local 67." The Director reasoned the long history of the combined unit was not enough to overcome the potential conflict of interest created by having lieutenants and rank-and-file firefighters represented by the same unit.

Local 67 sought a review of the Director's decision pursuant to N.J.A.C. 19:11-8.1.[4] PERC agreed to review the Director's decision. At an October 27, 2022 meeting, one of the PERC commissioners questioned why the issue was being reopened seven years after it was first addressed in the Borough's 2015 petition. An unidentified speaker noted the lieutenants claimed that because there were no longer fire captains in the unit, there was potential for conflict between the lieutenants and rank-and-file firefighters. Another commissioner commented, "[w]e have to deal with the record that's before us and the facts that are before us. And, that's what the Director did and that's what the Commission

---

[4] N.J.A.C. 19:11-8.1(a) provides: "[w]ithin [ten] days of service on it of the Director of Representation's decision, order or direction, any aggrieved party may file a request to review with the Commission."

A-1319-22

decision has to be." Ultimately, the matter was tabled for presentation at the next PERC meeting.

At the next meeting on November 22, 2022, the Board reversed the Director's decision, concluding the record did not indicate lieutenants had effective supervisory authority over rank-and-file firefighters. PERC issued a thirteen-page final agency decision.

This appeal follows. The Borough raises the following contentions for our consideration: (1) PERC erred because the presence of supervisory fire lieutenants and rank-and-file firefighters in the same bargaining unit constitutes an inherent conflict of interest; (2) PERC erred in failing to consider or give effect to the 2015 agreement of the parties to bifurcate the bargaining unit commencing with the next round of contract negotiations;[5] and (3) the absence of any "employer representative" PERC Board member input in the final agency decision biased the Borough as a public employer and thus no deference should be given to the Board's findings.[6]

II.

---

[5] This issue was not addressed in the final agency decision.

[6] This argument was not raised at the Board meeting and is not addressed in the final agency decision.

A-1319-22

We first address the Borough's contention the PERC Board erred in overturning the decision rendered by the Director. We begin our analysis by acknowledging the limited scope of our review. "[A]n appellate court reviews agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019); see Melnyk v. Bd. of Educ. of the Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). The party challenging the administrative action bears the burden of making that showing. Lavezzi v. State, 219 N.J. 163, 171 (2014).

Turning to substantive legal principles, N.J.S.A. 34:13A-5.3 provides in relevant part:

> Except as hereinafter provided, public employees shall have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization or to refrain from any such activity; provided, however, that this right shall not extend to . . . except where established practice, prior agreement or special circumstances dictate the contrary, . . . shall any supervisor having the

power to hire, discharge, discipline, or to effectively recommend the same, have the right to be represented in collective negotiations by an employee organization that admits nonsupervisory personnel to membership . . .

In Bd. of Educ. of Town of W. Orange v. Wilton, our Supreme Court explained "that where a substantial actual or potential conflict of interest exists among supervisors . . . and obligations to the employer in relation to each other, the requisite community of interest among them is lacking, and that unit . . . is not an appropriate negotiating unit." 57 N.J. 404, 427 (1971). The Court noted the Advisory Commission on Intergovernmental Relations drafted a model statute defining "supervisory employee" as "'any individual having authority, in the interest of the employer, (i) to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or (ii) responsibility to direct them, or (iii) to adjust their grievances, or (iv) effectively to recommend such action.'" Id. at 418 (quoting Government Employee Relations Report, § 51.215 (1970)). The Court added that amongst the employees represented within a negotiating unit, there should be a regard for the community of interest. Id. at 419.

In its final agency decision, PERC cites to and relies on its prior decisions pertaining to collective negotiating units comprised of both supervisors and

subordinates. The final agency decision quotes, for example, from a prior

decision in which PERC explained:

> We presume that in paramilitary organizations, such as fire departments, an inherent potential conflict of interest exists between superior officers and [rank-and-file] uniformed personnel. See West New York, [P.E.R.C. No. 87-114, 13 N.J.P.E.R. 277 (¶18115 1987)]. The presumption is not dependent upon a finding of the supervisory status of superiors or upon the presence of actual conflict among the groups. [Ibid.] An exception may be found in small units if the duties and authority of superiors and [rank-and-file] are virtually identical so that any potential for conflict between the ranks is de minimis. See Town of Harrison, P.E.R.C. No. 93-104, 19 [N.J.P.E.R.] 268 (¶24134 1993), affirming H.O. No. 93-1, 19 [N.J.P.E.R.] 39 (¶24018 1992). This situation is normally found in a very small public safety departments, where the lines of demarcation between ranks is slight.
>
> [D.R. No. 2023-2, 49 N.J.P.E.R. 90 (¶19, 2022), at 16-17).]

After reviewing the Director's decision in light of the record, the PERC

Board diverged from the Director's central finding, stating:

> Here, we find the record presented does not support a conclusion that lieutenants have authority to hire, discharge or recommend discipline, to a significant degree. Chief Hruska admits that as "Carteret is a Civil Service jurisdiction, lieutenants do not have the authority to hire, fire or formally discipline other employees."

10

[Carteret Boro., P.E.R.C. No. 2023-16, 49 N.J.P.E.R. 266 (¶ 61, 2022), at 8) (emphasis in original).]

The final agency decision adds, "Chief [Hruska] gave no examples of specific disciplinary recommendations made by lieutenants." Id. at 9 (emphasis in original).

The Board concluded,

> it is clear that under N.J.S.A. 34:13A-5.3, the lieutenants would not qualify as supervisors "having the power to hire, discharge, [or] discipline" unless they possess the power to "effectively recommend" such actions. On this question, there must be at least some evidence, which is not present here, demonstrating the lieutenants exercised the "effectively recommend" authority.
>
> [Id. at 12 (emphasis in original).]

The Board acknowledged that even "[a]bsent the power to effectively recommend, unit bifurcation may be required here if there is evidence that the lieutenants otherwise exercise 'significant authority' over the [rank-and-file]." Id. at 12. But the Board ultimately concluded, "[t]he record in this matter does not contain such evidence." Id. at 12. We see no basis upon which to overturn that finding. See Stevens v. Bd. of Trs. of Pub. Emp.'s Ret. Sys., 294 N.J. Super. 643, 651 (App. Div. 1996) ("As a general rule, when an administrative agency

makes a finding of fact, we will not disturb that decision unless the finding is not supported by substantial credible evidence.").

We add that at oral argument before us, counsel for the Borough candidly acknowledged there has been no significant change in circumstances—no "epiphany," to use counsel's characterization—to justify changing the longstanding membership of Local 67 against its will. That membership structure constitutes "established practice" within the meaning of the exception to the general rule as set forth in N.J.S.A. 34:13A-5.3. We emphasize, moreover, the final agency decision cites to and applies PERC's own precedents in concluding there is no need to alter Local 67's long history of representing both superior and rank-and-file firefighters. We decline to substitute our judgment for the agency, as we are not persuaded it acted arbitrarily or capriciously in rendering its final decision. See Saccone, 219 N.J. at 380.

III.

We turn next to the Borough's argument PERC ignored the parties' 2015 agreement to bifurcate the negotiations unit for their next collective bargaining agreement. No one disputes "[t]here is a strong public policy favoring the settlement of litigation." Chattin v. Cape May Greene, Inc., 216 N.J. Super. 618, 626 (App. Div. 1987) (citing Jannarone v. W.T. Co., 65 N.J. Super. 472, 476-77

(App. Div. 1961)). "[S]ettlement agreements will be honored 'absent a demonstration of "fraud or other compelling circumstances."'" Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983). But here, the record establishes Local 67 did not ratify any agreement or approve a change in its structure. Accordingly, the severance agreement was never consummated. In these circumstances, we do not believe PERC erred by failing to account for the 2015 agreement in the final agency decision.

## IV.

We need only briefly address the Borough's contention it was unfairly prejudiced by the absence of an "employer representative" Board member at the November 22, 2022 hearing. N.J.S.A 34:13A-5.2. provides:

> The commission shall consist of seven members to be appointed by the Governor, by and with the advice and consent of the Senate. Of such members, two shall be representative of public employers, two shall be representative of public employee organizations and three shall be representative of the public including the appointee who is designated as chairman.

The Borough argues it was prejudiced because there was only one public employer representative on the Board and he had to recuse himself on this matter. So far as the record before us shows, however, no objection to the

quorum was raised when the Board considered and voted on the Borough's CU petition. Rather, this issue is raised for the first time on appeal, only after the Board rendered its decision against the Borough.

PERC argues that "[s]ince its establishment in 1968, and notwithstanding the existence of vacancies, the Commission has exercised the powers and duties granted to it by the Act as long as a quorum is present and sufficient Commissioners are eligible to vote on the matters before it." We are unpersuaded this longstanding practice violates the letter or spirit of N.J.S.A. 34:13A-5.1 to -5.2. We decline to invalidate the vote based on the background of the specific commissioners comprising the quorum. Nor do we afford less deference to the agency's final decision based on the specific commissioners who voted in this matter.

We are likewise unpersuaded by the Borough's argument that a commissioner's comments expressing his personal opinion during the Board meeting undermines the final agency decision. Our review on appeal focuses on the written agency decision, not comments by individual commissioners. In the analogous context of decisions issued by Municipal Boards, we have stressed that Board members do not act individually. See Scully-Bozarth Post # 1817 of Veterans of Foreign Wars of U.S. v. Plan. Bd. of City of Burlington, 362 N.J.

Super. 296, 312 (App. Div. 2003). Instead, "[t]he [B]oard acts as a body. The [municipal] resolution provides the body's findings and conclusions, expressed by those who vote to adopt the resolution." Ibid. Furthermore,

> [w]hether the final version of the [municipal] resolution, as adopted, differs from any comments publicly made by one or more members voting on it, or whether one or more members did not publicly comment at all, does not detract from the resolution's status as the official statement of the [B]oard's findings and conclusions.
>
> [Id. at 312-13; see N.Y. SMSA v. Bd. of Adj. of Twp. of Weehawken, 370 N.J. Super. 319, 333-34 (App. Div. 2004) ("[R]emarks [made by an individual Board member] at best reflect the beliefs of the speaker and cannot be assumed to represent the findings of an entire Board.").]

Individual comments do "not detract from the resolution's status as the official statement of the [B]oard's findings and conclusions." Scully-Bozarth, 362 N.J. Super. at 312-13.

Here, the final agency decision constitutes the official statement of the PERC Board's findings and conclusions. Our review of that written decision reveals no basis for overturning it. To the extent we have not specifically addressed them, any remaining arguments raised by the Borough lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-1319-22